**Cathy BURKETT–WOOD and Cabel Wood, her husband, Plaintiffs Below, Appellant/Cross Appellees,**

v.

**Theresa HAINES, Defendant Below, Appellee/Cross Appellant.**

No. 630,2005.

Supreme Court of Delaware.

Submitted: Aug. 16, 2006.

Decided: Sept. 7, 2006.

Amended: Sept. 29, 2006.

---

**22.** Supr. Ct. R. 19(c).

Michael I. Silverman, Silverman, Mc-Donald & Friedman, Wilmington, Delaware for appellant/cross appellees.

Stephen P. Casarino, Casarino, Christman & Shalk, Wilmington, Delaware for appellee/cross appellant.

Before STEELE, Chief Justice, BERGER and RIDGELY, Justices.

STEELE, Chief Justice.

Cathy Burkett–Wood, the plaintiff-appellant, filed a complaint in Superior Court in New Castle County alleging that Theresa Haines, the defendant-appellee, negligently injured her in a car accident. The case went to a trial before a jury.[1] At the

---

1. Cabel Wood, Cathy Burkett–Wood's husband is also a named plaintiff. For ease of discussion we will refer to the plaintiffs as "Wood" throughout this Opinion. Likewise, we will refer to Theresa Haines as "Haines."

close of the evidence, Wood moved for a directed verdict on the issue of causation. She claimed that Bruce J. Rudin, M.D., the only medical expert to testify at trial, presented uncontradicted testimony that Haines's negligence caused both the accident and Wood's injuries, and therefore, that no reasonable jury could find otherwise. The trial judge denied Wood's motion and the jury returned a verdict finding that Haines's negligence alone caused the accident. The jury, however, awarded Wood no damages because it found that Haines's negligence did not cause Wood's alleged injuries. Wood then filed a Motion for a New Trial asserting that the jury's damages finding was against the weight of the evidence. The trial judge denied Wood's post trial motion.

Wood now argues that the trial judge erred by: (1) denying her Motion for a Directed Verdict regarding the issue of the proximate cause of her injuries, and (2) denying her Motion for a New Trial on the basis that the jury verdict was inconsistent and irreconcilable with the evidence presented at trial. Wood's first argument fails because a reasonable juror could find that Rudin's testimony created a genuine issue of material fact about whether Haines's negligence caused her injuries. Internal inconsistencies in Rubin's testimony prevented the plaintiff from *conclusively* establishing that the accident caused her injuries—a necessary predicate before setting aside the jury's verdict. Wood's second argument fails because, based on the overall evidence presented at trial, a reasonable juror could find that Wood's injuries did not result from the accident. Accordingly, we affirm the judgment of the Superior Court.[2]

## I.

### A. Fact and Procedural History

On December 10, 2000, Wood was driving her car in New Castle County.[3] While she was attempting to merge from Route 7 onto Route 40, Wood stopped at a yield sign and waited for an opening in the traffic on Route 40. Haines's car then struck Wood's car in the rear. Both Haines and Wood agreed that the collision caused minor impact. Haines testified that the impact was a "tap" and that she felt no jolt of any kind. Wood testified that her car moved less than a foot when Haines's car struck hers. Wood further testified that she had pain instantly going down her neck and into her left arm. Despite her pain, Wood did not seek immediate medical treatment and continued driving after she inspected her car for damage and exchanged information with Haines.[4]

About one year before the accident, Rudin surgically treated Wood for a "severely degenerative disc in her back." Wood had also reported pain to her shoulder and upper arm sometime before the accident.

On January 3, 2001, approximately three weeks after the accident, Wood went to

---

2. Haines cross appealed claiming that the trial judge erred by granting Wood's Motion *in limine* to exclude the expert testimony of a biomechanical engineer. We need not decide the issue because Haines's cross appeal would be relevant only if we were remanding for a new trial.

3. Wood's daughter rode in the front passenger seat and Wood's two minor grandchildren rode in the back seats.

4. After the collision, Haines, Wood, and Wood's daughter briefly left their vehicles to check their respective cars for damage. After seeing no damage to either vehicle, Wood and Haines pulled into a nearby parking lot to exchange information.

see Rudin again.[5] Wood told Rudin that she was involved in an accident, and complained about neck and arm pain. Rudin conducted a physical examination and reported that Wood "was tender to palpation over from C–6 down through T–1, which is the area in her neck where the x-rays were actually abnormal. She didn't have any notable spasm, but was tender over her trapezius muscles as well. Neurologically she was intact." Rudin prescribed pain medication and physical therapy for Wood's symptoms.

In March 2001, after Wood continued to report severe pain, Rudin ordered an MRI which revealed abnormalities in Wood's neck at levels C5–6 and C6–7. When cross-examined at trial, Rudin acknowledged that in addition to disc herniations, the MRI revealed disc desiccation over most of Wood's cervical spine, which occurs over a period of time and which pre-existed the accident.[6] In May of 2001, Rudin performed an anterior cervical discectomy and fusion on the disc abnormality at C5–6.

Because Wood's pain persisted after the May 2001 surgery, Rudin performed a similar operative procedure at C6–7 in August of 2004. At the August 29, 2005 trial, Rudin was the only medical expert who testified. He testified by videotaped deposition and by live testimony.[7]

At the close of all of the evidence, Wood moved for a directed verdict on causation. Wood's counsel cited *Amalfitano v. Baker*[8] and claimed that Wood had presented uncontradicted, and, therefore, uncontroverted evidence that Haines's negligence caused both the collision and injuries proximately related to the collision. Wood wanted the jury instructed on damages alone because Rubin's uncontradicted medical testimony, confirmed by an objective medical test (an MRI) supporting Wood's subjective complaints, established a causal link between the accident and Wood's injuries.[9] The trial judge responded that he had *Amalfitano* in mind throughout trial and that he did not see where plaintiff's

5. Wood visited her primary care physician, Dr. DiMaio, three days after the accident. He provided her with pain medication and had her undergo x-rays. The pain medication did not cure Wood's problem and she went to see Rubin.

6. During direct examination, Rudin testified:
   Q: When you looked at the films, what if anything abnormal did you find?
   A: That note demonstrated a large disc herniation at C5–6 and a smaller one at C6–7.
   During cross examination Rudin testified:
   Q: Now, the MRI noted that there was disc dessication along pretty much the entire cervical spine. Is that correct?
   A: Yes.
   Q: All right. Disc dessication means that the discs in her neck have lost water content?
   A: That's correct.
   Q: And that is something that happened over a period of time?
   A: Yes.
   Q: That clearly is something that pre-existed this accident?
   A: Yes.

7. After Wood's surgery in May of 2001, counsel was preparing for the upcoming litigation in this case. During that preparation, Rudin gave videotaped testimony about the May surgery. The trial was continued, however, because Wood needed additional surgery. Wood had her next surgery in August of 2004. Thus, at trial, the jury saw Rudin's videotaped testimony discussing the May surgery, as well as his live testimony.

8. *Amalfitano v. Baker*, 794 A.2d 575 (Del. 2001).

9. *Id.* ("where medical experts present *uncontradicted* evidence of injury, *confirmed by objective medical* tests supporting a plaintiff's subjective testimony about her injuries and offer opinions that the injuries relate to the accident about which the plaintiff complains, a jury award of zero damages is against the weight of the evidence.")(Emphasis added).

counsel "pointed out to the jury" objective signs of injury. The following exchange took place after the trial judge asked Wood's counsel to point to when Rubin specifically testified about objective findings versus subjective complaints of injuries:

[Counsel]: I can't sir. I didn't think this was a case where the testifying expert had to be asked if the signs and symptoms of injury were subjective or objective, and the reason that I didn't think that is because you've got a surgery case. So, there's clear signs of objective injury, and if the Court has a question about it, I'd be happy to make a record of it. We have an MRI study taken in February of 2001 that's part of the exhibit package, demonstrating a soft disk herniation at C5–6 and another disk herniation at C6 and 7.

[Trial Judge]: So, you're telling me that the Court needs to make the objective determination, not it doesn't come in through expert testimony.

[Counsel]: I think that's right, and especially when you look at the decisions that have come out under that line of cases.

[Trial Judge]: I can't find one that splits that in that way....

[Counsel]: When the Court looks at these cases, and the Court's analysis has been something as simple as well, the doctor mentioned spasm, and spasm qualifies—at least it usually does in this Court—as an objective sign of injury, and Amalfitano instruction or an Amalfitano ruling applies, and here, we have got tremendously more than that. We [have] two herniated disks. We've got disruption of the vertebral column....

[Trial Judge]: Can you point to a case that tells me, as a matter of law, an MRI is an objective test, a spasm is an objective test? Although we don't have a spasm in this case.

[Counsel]: I suppose I can find a case. If the Court wanted me to do some research to find a case that says that a herniated disk is an objective finding or—

[Trial Judge]: Yes. I need some guidance along that line, because clearly Amalfitano talks about the unconverted medical evidence, but it has to be confirmed by independent objective testing, and nowhere in the case did the doctor say an MRI was an independent test or an objective test. Nowhere did he say tenderness was objective. He didn't make that distinction for the fact finder or the Court ... Neither did he talk about subjective symptoms of when the plaintiff may have been relating them to a car accident.... And it's not clear, through objective tests, that the operation was related to the accident.

After further discussion the trial judge denied Wood's Motion for a Direct Verdict on causation and stated:

*Amalfitano* requires that the medical evidence be confirmed by independent, objective testing. Certainly, there's been no discussion in this case about objective versus subjective. I'm not sure that the doctor has confirmed what objective testing is and what symptoms or findings demonstrate that. So, because of that, I think this case is different from *Amalfitano v. Baker*.

On September 1, 2005, the jury returned a verdict form clearly finding that Haines's negligence caused the accident and that Haines's negligence was not the proximate cause of Wood's injuries. They consequently awarded Wood no damages.

After the jury's verdict, Wood filed a Motion for a New Trial. The trial judge denied that motion noting that, based on *Amalfitano*, jury awards of zero damages are only against the great weight of evidence when *uncontradicted* expert medical testimony establishes causation. When that expert testimony is based upon the victim's subjective complaints, it must be supported and confirmed by independent objective findings. The trial judge further explained that, despite Rudin's testimony about causation, during cross examination Haines's counsel drew out discrepancies between Rudin's deposition and live testimony:

> In his videotaped deposition, Dr. Rudin testified that there was a *distinction* between degenerative disc, which Plaintiff had in her low back prior to the accident, and a herniated disc, which she had in her neck. However, during live testimony Dr. Rudin was cross-examined as to the fact that he had prepared two operative reports relating to the neck. In one report, he called the disc degenerative and in the other report he called it a herniation. During

his testimony he stated that there was *no distinction* between degeneration and herniation. Moreover, when describing Plaintiff's pre-existing neck condition, he admitted that the Plaintiff had pre-existing desiccation of her discs.... Defendant contends that a sufficient evidentiary basis exists to support the jury's verdict because Dr. Rudin's testimony was contradictiory, his conclusions concerning proximate cause were substantially based on Plaintiff's subjective assertions, and he had no understanding as to how the accident occurred.

Given these discrepancies in Rudin's testimony and the inference of bias that flowed from Rudin's own financial interest in an outcome that favored Wood,[10] the trial judge concluded that the evidence established a reasonable basis for the jury to conclude that while Haines's negligence caused the accident, the injuries complained of by Wood and her later surgeries were not causally related to that accident. We now address the trial judge's rulings on Wood's Motions.[11]

---

**10.** On cross examination, Haines's counsel revealed Rudin's bias:

Q: [This document] is an assignment that was signed by [Wood] to your practice; isn't that correct?

A: Yes.

Q: And in essence, you've—by that document, she's agreeing to pay First State Orthopedics out of any settlement or recovery she gets in this case?

A: That's correct. That's standard practice for our office.

Q: Right, when there's an accident?

A: When there's litigation . . .

Q: This is an assignment from recovery from this litigation?

A: Right. Well, it basically says that if there's no payment of the services provided to her, and there is litigation that ultimately pays her medical expenses, that my office would get paid.

Q: First?

A: First.

Q: So you have an interest in this litigation then?

A: Well, I mean, I expect to get paid for the services that I provide. So, is that an interest? I'm not quite—it's not different than your interest. I'm here because that's your job. I provide services to my patients when they come to me for care. I mean, I haven't gotten paid for any of the care that I provided for Cathy for four years.

Q: And you, of course, expect to get paid when she gets—if she gets a recovery in this litigation?

A: I would expect to get paid if she's—yes, if she settles the litigation.

**11.** We note that both of these claims would require us to accept Wood's suggestion that Rudin's testimony was not contradicted. In other words, if we find that Rudin's testimony was contradictory, both of Wood's claims fail.

## II.

### 1. Motion for a Directed Verdict

■ We review the trial judge's denial of a Motion for a Directed Verdict to determine "whether the evidence and all reasonable inferences that can be drawn therefrom, taken in a light most favorable to the nonmoving party, raise an issue of material fact for consideration by the jury." [12]

■ Wood contends that the trial judge erred because Rudin's testimony related the injuries and the need for two surgeries to the accident that Haines's negligence caused. Wood claims that Rudin based his opinion on an X-ray, MRI findings, and discernible tenderness on palpation during his physical exam of her that confirmed her subjective complaints, and that Haines offered no evidence contradicting Rudin's testimony. Therefore, Wood contends that there was no issue of material fact in

dispute relating to whether the accident caused the injuries she documented at trial. We disagree.

Rudin's testimony was confusing and contradictory. Rudin's testimony, viewed in a light most favorable to Haines, as the "nonmoving party," does not make it clear whether the disc herniations the MRI revealed related to the accident or to a preexisting condition. [13] Rudin's videotaped testimony and live testimony contradict each other. In his videotaped testimony Rudin distinguishes between degenerative disc disease and a herniated disc, and in his live testimony he claims that the conditions are the same. [14] Moreover, one operative report prepared by Rudin indicates that the surgery was for a herniated disc with no mention of the car accident. His second operative report describes the preoperative diagnosis as degenerative disc disease and relates it to the car accident. [15]

---

**12.** *Fritz v. Yeager*, 790 A.2d 469, 471 (Del. 2002) (citing *Russell v. Kanaga*, 571 A.2d 724, 731 (Del.1990)).

**13.** *See supra* note 6.

**14.** *See infra* note 15.

**15.** During cross examination of Rudin, Haines's counsel questioned Rudin about the inconsistencies in his two operative reports written after Wood's August 2004 surgery:

Q: Let me just ask you about an operative report. When you perform surgery, do you then dictate the report?
A: I do.
Q: Do you do it during surgery, after surgery?
A: I do it after surgery. It tells what I did during surgery.
Q: Do you do it immediately after surgery?
A: If I have time. If not, I'll do it within days....
Q: .... You have two operative reports; do you not?
A: Yeah. You must have lost one and then found it. I would only dictate the second one if they—the Medical Records tells me that one is missing.

Q: Well, let's go back then. The first one you dictated was on August the 10th of 2004.
A: Correct.
Q: Is that standard to wait five days to dictate an operative report?
A: It's when I get time to sit at my desk and spend two hours dictating.
Q: Okay, and that was transcribed on the 11th, I think?
A: The next day.
Q: And the second one is dated August the 12th.
A: Correct.
Q: That's seven days after the procedure?
A: Correct.
Q: But there's a difference between the two, sir?
A: Yes.
Q: That's what caught my eye. In the first one, under the pre-operative diagnosis, you have herniated disk at C6–7?
A: Yes.
Q: And you've described the procedure that you did, and then in the second, it says degenerative disk disease?
A: Yes.
Q: And then you go on and relate it to the automobile accident?

In sum, Rudin never clearly opines whether the trauma Wood suffered in the accident, slight though it may have been, caused her herniated discs or whether her preexisting abnormality caused the herniated discs which prompted the surgery.

In *Dunn v. Riley*,[16] we faced similar facts involving a rear end collision in which the jury found the defendant negligent but concluded that the negligence did not proximately cause the plaintiff's injuries. There, Dunn's expert's testimony about causation was also contradictory. Noting the expert's inconsistencies, we stated:

> In his first report ... Dr. Senu–Oke opined that Dunn's injuries resulted from the *July* 1999 accident. In his second report ... he opined that Dunn's injuries resulted from the *December* 1999 accident. Dr. Senu–Oke did not mention the December accident in his first report, nor did he mention the July accident in his second report. At trial, Dr. Senu–Oke was cross-examined before the jury about the glaring inconsistency.[17]

A: Yes.
Q: Something you didn't do in the first [report]?
A: Yeah. Sometimes I'll give an indication for surgery, is actually what it is, and herniated disk is degenerative disk disease. *It may sound different to you, but it's the same diagnosis.* A normal disk doesn't herniate. So, it's a, you know, subset of the same diagnosis.
Q: So, when you have down "herniated disk," that is the same as "degenerative disk disease?"
A: Well, it's a subset of degenerative disk disease.

In Rudin's videotaped testimony he claimed that degenerative disk disease and a herniated disk were different, and suggested that Wood had neck surgery because of the latter:

A: I operated on her because of that herniated disc.
Q: But all of that is consistent with degenerative disc disease, isn't it?

Based on Dunn's expert's inconsistencies in his reports, we found that the "evidence on the issue of causation was in conflict, and, thus, did not *conclusively* establish that [the plaintiff's] injuries were causally related to the accident."[18]

Here, the record shows at least uncertainty about whether Rudin's medical testimony conflicted on the issue of whether degenerative disc disease or the accident precipitated the surgeries and, accordingly, that issue of material fact was for the jury to decide.[19] Therefore, we conclude that the trial judge did not abuse his discretion by denying Wood's Motion for a Directed Verdict.

Wood attempts to draw support from *Christina Sch. Dist. v. Reuling.*[20] There, Reuling was injured when he was hit from behind by a school bus while stopped at a red light.[21] At trial, he called two doctors who testified within a reasonable degree of medical probability that the accident caused his injuries.[22] Both doctors based their medical opinion on Reuling's subjective complaints which they confirmed by an objective medical test (a CAT scan).[23]

A: Right. But that is not why she had an operation. *She had an operation for a large disc herniation, not for [degenerative disc disease].*

16. 864 A.2d 905, 906 (Del.2004).

17. *Id.* at 907.

18. *Id.*

19. *See Supra* notes 6,15.

20. *Christina Sch. Dist. v. Reuling,* 577 A.2d 752, 1990 Del. LEXIS 146 (Del.1990)(Order).

21. *Id.* at * 1.

22. *Id.* at *6–7.

23. *Id.*

"At trial, after all of the evidence had been presented, [Reuling] moved for a partial directed verdict.... Reuling requested the [trial judge] to rule, as a matter of law, that the March 20, 1985 accident caused [Reuling]'s January 5, 1988 operation and all damages related to that surgery...."[24] The trial judge granted the motion. On appeal, Christina's counsel claimed that the trial judge erred by granting the directed verdict on causation because factual disputes arose after his cross examination of Reuling's medical experts.[25] Specifically, Christina's counsel believed he created a factual dispute during his cross examination of the doctors because he demonstrated that:

> (1) there was a span of one year and two months from August 1986, to October, 1987 in which [Reuling] received no medical treatment, (2) there was almost a three-year span between the automobile accident and the corrective surgery; and (3) [the doctors] had no knowledge of the nature or extent of the March 20, 1985 accident.[26]

We affirmed the trial judge's granting of Reuling's Motion for a Directed Verdict because "the record reflect[ed] that, during cross-examination at trial, counsel for the defendants did not elicit any testimony from either [doctor] that would have changed their medical opinion as to the cause of the surgery."[27] Thus, the uncontradicted testimony there compelled only one conclusion—the accident proximately caused Reuling's injuries.

For the reasons discussed earlier in this section, this case is easily distinguishable from *Reuling*. During Rudin's cross examination, counsel revealed that Rudin had given two arguably inconsistent operative reports, and had also offered confusing testimony about the relationship between a herniated disc and degenerative disc disease. Despite Rudin's attempts to reconcile his testimony, Rudin's arguably contradictory testimony and arguably inconsistent reports created a factual dispute about the cause of Wood's injuries for the jury to resolve.

## 2. Motion for a New Trial

Wood's second claim on appeal is that the trial judge erred by denying her Motion for a New Trial because the jury verdict was irreconcilable and inconsistent with the evidence presented at trial. We review the trial judge's denial of a Motion for a New Trial for an abuse of discretion.[28] The standard for our review of a Motion for a New Trial is well settled:

> [A] jury's verdict will be upheld unless it is against "the great weight of the evidence." The standard for this Court's review is set forth in the Delaware Constitution which provides "that on appeal from a verdict of a jury, the findings of the jury, if supported by the evidence, shall be conclusive." Accordingly, great deference must be given to the jury verdict in deciding a motion for a new trial that is based upon insufficient evidence. The factual findings of a jury should not be disturbed if there is "any competent evidence upon which the verdict could reasonably be based." Upon review, this Court views the record from the perspective most favorable to the jury's verdict. The verdict should not be set aside unless *"a reasonable jury could not have reached the re-*

24. *Id.* at *3.

25. *Id.* at *7–8.

26. *Id.*

27. *Id.* at *9.

28. *Dunn*, 864 A.2d at 906.

*sult.* [29]

To support her claim, Wood relies on *Maier*[30] and *Amalfitano*.[31] In *Maier*, we held that when the evidence establishes that an accident caused injuries, a jury is required to return a verdict of at least minimal damages.[32] In *Amalfitano*, we held that "where medical experts present *uncontradicted* evidence of injury, confirmed by objective medical tests supporting a plaintiff's subjective testimony about her injuries and offer opinions that the injuries relate to the accident about which the plaintiff complains, a jury award of zero damages is against the weight of the evidence." [33]

Wood contends that the evidence presented at trial was "clear, convincing, and unequivocal." She suggests that where other medical experts did not contradict Rudin's testimony about causation, the trial judge should have granted her Motion for a New Trial because no reasonable jury could have ignored her evidence on causation by awarding zero damages. We disagree. As we concluded in *Dunn*, arguably conflicting evidence given by a single expert related to causation cannot conclusively establish that the accident caused the injuries. We stated:

> In both *Maier* and *Amalfitano*, causation was conceded and the only issue confronting the jury was only the extent of the plaintiff's injuries. Here, in contrast, Riley developed evidence during cross-examination of Dunn's expert, that called into question the reliability of that expert's opinion as to causation. Because both sides presented conflicting evidence on the causation issue, Dunn did not conclusively establish causation, which became a question for the jury. Accordingly, the jury verdict awarding zero ($0) damages was not unreasonable.[34]

Here, Haines did not concede that the accident caused Wood's injuries. Rudin's testimony elicited on cross examination contradicted his videotaped testimony. The MRI, undisputedly an objective test, showed an injury that may have preexisted the accident. Nowhere in the record is there undisputed evidence that Wood sustained some injury as a result of the accident other than Wood's subjective complaints of immediate pain.[35] Moreover, the jury heard testimony from Rudin that he has an interest in the outcome of the case because he had been unpaid for his services for four years and that Wood agreed to pay him first out of any proceeds from settlement or recovery in this case.[36] Therefore, a reasonable jury could have chosen to disregard Rudin's inconsistent testimony altogether on the basis of bias.[37] Accordingly, the trial judge did not abuse

---

29. *Walker v. Shoprite Supermarket, Inc.*, 859 A.2d 620, 622–23 (Del.2004)(ORDER) (citations omitted).

30. 697 A.2d 747 (Del.1997).

31. 794 A.2d 575.

32. *Maier*, 697 A.2d at 749.

33. *Amalfitano*, 794 A.2d at 575 (emphasis added).

34. *Dunn*, 864 A.2d at 907.

35. *See Supra* notes 6,15. The record does not reflect medical testimony, within a reason-

able medical probability, for example, that the accident caused a herniated disc resulting from Wood's susceptibility to such an injury because of the preexisting degenerative disc disease, nor apparently did Wood's counsel argue this possibility to the jury. If Rubin intended to convey some such scenario to explain Wood's immediate pain and the post accident surgeries, he did not clearly articulate it.

36. *See Supra* note 10.

37. In *Amalfitano*, 794 A.2d at 578, we noted the lack of any evidence suggesting that the plaintiff's experts were biased when conclud-

his discretion by denying Wood's Motion for a New Trial.

Because we have determined that Rudin's testimony did not conclusively determine that the accident caused Wood's injuries, we need not address the issue of whether the MRI in this case confirmed Wood's subjective complaints. While counsel often asks medical experts to explain the difference between subjective complaints recorded in a history and objective findings supporting an injury, we note that an MRI, an X-ray, and spasm revealed on palpation to a physical examination are considered objective medical evidence in this jurisdiction. There is no condition precedent that a physician opine that they are so as a matter of fact.[38] We also recognize, however, that Rudin's testimony about what the MRI revealed actually created a disputed fact about whether the surgery resulted from a need to treat her preexisting degenerative disc disease or whether it substantiated Wood's subjective complaints that the accident caused her pain, the herniated discs, and therefore the later surgical fusions. As the trial judge correctly found, there was, therefore, a reasonable basis for the jury to conclude that Haines's negligence did not cause Wood's physical problems.

---

ing that no reasonable juror could have returned a verdict of zero damages. We stated:

In the present case, there is no evidence suggesting the kind of credibility problems that plagued the plaintiff in the *Gier* case. Defense counsel failed to raise any credible issue about the motives of or suggesting bias by the plaintiff's expert witnesses that could taint their testimony about the plaintiff's condition, the independent and objective nature of their examinations and tests or their ultimate conclusions that she suffered injury as a result of the April 1997 accident.

38. *See Reuling,* 577 A.2d 752, 1990 Del. LEXIS 146, at *10 (a CAT scan is an objective medical test). We mention this only to avoid any confusion by the trial judge's earlier quot-

## III.  Conclusion

For the foregoing reasons the judgment of the Superior Court is AFFIRMED.

---

ed language. *See Supra* p. 6–7. One possible interpretation of his language is that Rudin was required to opine that an MRI is an objective medical test. We would not agree with that conclusion because an MRI is clearly an objective medical test. Rudin's lack of clarity in articulating exactly how the objective findings related to causation apparently led to the jury finding no proximate cause. The other, and in our view, most likely interpretation is that the trial judge correctly observed that Rudin did not make it clear that the MRI was not only consistent with Wood's subjective complaints, but that it also established objectively that the accident aggravated the preexisting degenerative disc disease and caused the herniated discs.