Eddie PORTER and Commercial Truck Services, Inc., Defendants Below, Appellants,

v.

Robert L. TURNER, Plaintiff Below, Appellee.

No. 276,2007.

Supreme Court of Delaware.

Submitted: May 21, 2008.
Decided: June 20, 2008.

Michael I. Silverman of Silverman McDonald & Friedman, Wilmington, Delaware for appellants.

Roger D. Landon of Murphy & Landon, Wilmington, Delaware for appellee.

Before STEELE, Chief Justice, HOLLAND and JACOBS, Justices.

STEELE, Chief Justice.

A Superior Court jury found defendant-appellant Eddie Porter responsible for an automobile accident in Newark and awarded plaintiff-appellee Robert Turner

$538,000 compensatory damages and $107,000 punitive damages. Porter argues that a Superior Court judge erred when he (1) denied Porter's motion for a directed verdict on punitive damages, (2) admitted Turner's economist's lost income and future medical costs testimony, (3) denied Porter's motion for a mistrial after Turner mentioned insurance on redirect and cross-examination.

We conclude the following:

First, the testimony at trial showed that Porter faced a red light for eight seconds and, nevertheless, accelerated his tractor trailer through the intersection. These facts were a sufficient basis for a jury to conclude that Porter acted wantonly or willfully thereby permitting the jury to consider punitive damages. Second, the trial judge acted within his discretion when he allowed Turner's economist to offer an opinion on the costs of future medical expenses and future lost income, because the factual assumptions on which the economist relied, assumptions that Porter's claims were flawed or defects in the economist's respective analysis, would be revealed by Porter's counsel's crossexamination. Finally, although Turner's testimony did imply that Porter's insurance company wrongfully failed to pay for his medical expenses, we find that the trial judge acted within his discretion by issuing a curative instruction rather than grant a mistrial. Therefore, we **AFFIRM.**

### *FACTS*

Porter, while operating a tractor trailer, ran a red light and struck Turner's vehicle. Hughart, a driver of a vehicle in front of Turner, testified that he was first in line stopped at an intersection and waited eight seconds after the light turned green before driving into the intersection. He testified that he then saw and heard Porter accelerate into the intersection. After seeing Porter's tractor trailer, Hughart accelerated to avoid it. Another witness testified that Porter swerved to avoid Turner's vehicle, but still struck it. Porter was traveling at or under the speed limit. The Newark Police report confirmed skid marks that stretched 90 feet.

Turner worked at the Chrysler assembly plant in Newark. Turner's job is physically demanding, requiring him to run conduit piping, pull heavy cable, and disconnect wires. To complete these responsibilities he needs to carry and use various tools weighing collectively over fifty pounds. Turner's medical expert, Dr. George Buhatiuk, diagnosed Turner with lumbo sacral strain and sprain, radiculitis, and a cervical and thoracic sprain. After the accident, Turner stopped working overtime at the Chrysler plant because of pain from those injuries. Turner, however, did increase his hours by working a less lucrative "side job" as an independent electrician.

At trial, Turner presented both Dr. Buhatiuk, a physician, and an economist, Andrew Verzilli. Turner disclosed, very near to trial, that Dr. Buhatiuk would testify about Turner's permanent injury and his resulting need for lifelong medical care. Porter argued that Turner's delay in disclosing that his medical expert would testify about lifelong care prejudiced Porter. Accordingly, Porter sought to exclude the economist's expert opinion on lifetime future medical care. The trial judge explained his annoyance with Turner's delay in identifying this issue. However, the trial judge suggested: "[t]he practical solution is to allow counsel to develop the revised figures during cross-examination easily be done [sic] and was. The unacceptable solution would have been to bar any testimony from [Verzilli] about future medical expenses."

About Turner's future medical treatment, Dr. Bohatiuk testified [1] that, because of Turner's injuries from the accident, he had permanent work restrictions and would not be able to work any overtime. Porter contends that Dr. Bohatiuk never expressly stated how long Turner would need future care and incur future expenses and that, therefore, his testimony was too "unreliable" to be admitted. Dr. Bohatiuk did testify about Turner's permanent injuries and about the future treatments that Turner would require for those permanent injuries. Dr. Bohatiuk did not state how long Turner would require treatments for his injuries, but his use of the term "permanent" implied that they were life or at least work lifelong.

Andrew Verzilli, Turner's economist, presented projections about Turner's lost income and future medical expenses as a result of the accident. Verzilli calculated the *cost* of future care based on Dr. Bohatiuk's projections of the future care likely to be needed. Verzilli calculated a range of future medical expenses from $74,673.00 to $84,761.00. Porter's counsel objected to Verzilli's testimony, because Verzilli could not, based solely on Dr. Bohatiuk's testimony, reliably assume the future medical expenses he projected were lifelong expenses likely to be incurred. Porter contends that Verzilli's opinion on future medical was inherently flawed and unreliable, would be confusing to the jury and, thus, should be excluded.

Verzilli based his projections for the lost income on Turner's tax returns before and after the incident, and estimated the loss up to a working age of 66. Verzilli projected lost income discounted to present value to range from $546,875.00 to $582,906.00. On crossexamination, Verzilli admitted that when he calculated the lost income figure, he never accounted for income at Turner's "side job" where Turner had worked when he reduced his overtime at Chrysler.

Turner also testified. On both redirect examination and crossexamination, Turner mentioned that an insurance company had failed to pay for his medical expenses. First, Turner was asked why he did not follow up on physical therapy. He explained that the insurance company did not pay for his medical expenses, and he did not have the money to pay for physical therapy. Next, on redirect, Turner testified that Chrysler informed him that Porter's insurance company, not Chrysler, was obligated to pay his medical expenses but had refused. Immediately following this testimony, the trial judge recessed for fifteen minutes and Porter moved for a mistrial. The trial judge denied that motion and instructed the parties to craft a curative instruction. While preserving his motion for a mistrial for appeal, Porter agreed to the following curative instruction:

> Ladies and gentleman of the jury, prior to the recess, you may have heard the plaintiff mention insurance as a reason for the inability to undertake additional physical therapy. You should be aware that the decision to terminate further physical therapy payments was made by a third party unrelated to the defendant or the plaintiff.

The jury returned a verdict in favor of Turner for $538,000 in compensatory damages and $107,000 in punitive damages. After the jury returned their verdict, Porter moved for a new trial based on the errors of allowing the jury to consider punitive damages, admitting Verzilli's opinion on future lost income and medical expenses, and Porter's alleged improper introduction of insurance before the jury.

1. The jury saw Dr. Bohatiuk's video deposition at trial.

The trial judge denied the motion. This is Porter's appeal.

## DISCUSSION

Porter raises three issues on appeal: (a) whether the trial judge erred by denying Porter's motion for a directed verdict on punitive damages; (b) whether the trial judge erred by admitting a medical expert's testimony about the cost of anticipated future medical care and an economist's testimony about Turner's future economic losses; and, (c) whether the trial judge erred by denying Porter's motion for a mistrial after Turner testified before the jury about the availability of Porter's insurance and Porter's carrier's refusal to provide insurance coverage.

### A. Punitive Damages

■■■ The availability of punitive damages as a remedy in this case turns on whether Turner established a *prima facie* case that Porter's driving exhibited wilful and wanton disregard of others' safety. We review the trial judge's denial of a motion for a directed verdict to determine "whether the evidence and all reasonable inferences that can be drawn therefrom, taken in a light most favorable to the nonmoving party, raise an issue of material fact for consideration by the jury."[2] Under Delaware law, "[p]unitive damages are recoverable where the defendant's conduct exhibits a wanton or wilful disregard for the rights of plaintiff. For a defendant's conduct to be found wilful or wanton, the conduct must reflect a 'conscious indifference' or 'I don't care' attitude."[3] On appeal, we must determine whether the facts presented at trial provided a sufficient ba-

sis for a jury to conclude that Porter's conduct exhibited "a wanton or wilful disregard for the rights of [Turner]."[4]

We find that the testimony in Turner's case in chief established a factual basis from which a jury could conclude that Porter operated his tractor trailer in willful and wanton disregard of the safety of others. If believed by the jury, that testimony established more than Porter merely carelessly disregarding a red light at a controlled intersection where other traffic was present. If the jury accepted as true all of Hughart's testimony—that Porter faced a red light for *eight seconds* and, nevertheless, decided to *accelerate* his *tractor-trailer* through the intersection—they could reasonably find that that conduct constituted wilful and wanton disregard of the safety of others. In any collision with crossing traffic, Porter's tractor trailer would inflict serious damage on any other vehicle and potentially endanger the other driver's life. Moreover, so much time had elapsed after Porter's light turned red that Porter collided, not with the first, but with the second, car originally stopped at the intersection. Because Porter faced a red traffic signal for such a long period of time yet still accelerated his truck through the intersection, we conclude that a jury could reasonably find that Porter had displayed a conscious indifference toward the safety of others and had wilfully and wantonly disregarded the consequences to all traffic crossing the intersection.

### B. Expert Testimony

■■■ Porter's second argument relates to expert testimony. We review a trial

2. *Burkett–Wood v. Haines*, 906 A.2d 756, 762 (Del.2006).

3. *Cloroben Chem. Corp. v. Comegys*, 464 A.2d 887, 891 (Del.1983) (citations omitted).

4. *Id.*

judge's decision to admit expert testimony for abuse of discretion.[5] "This deferential standard of review is simply a recognition that trial judges perform an important gatekeeping function and, thus, 'must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable.'"[6]

Porter attempts to craft his argument as an exposé of the trial judge's failure to properly "gatekeep" under *Daubert.*[7] Porter claims that both experts' testimony lacked "reliability" under D.R.E. 702 and was not "relevant, reliable, validated and therefore, trustworthy."[8] Porter confuses *Daubert's* reliability test based upon verifiable scientific methodology with the trial judge's less complex role as "gatekeeper" under D.R.E. 403. D.R.E. 403 permits the exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence."

■ Porter first attacks Dr. Bohatiuk's testimony, contending that Dr. Bohatiuk never expressly testified that Turner's injury would require lifelong care. This is really nothing more than a contention that Dr. Bohatiuk's failure to state expressly that Turner would require lifelong care provided an insufficient foundation for Verzilli's economist opinion that lifelong treatment would cost $74,673 to $84,761 discounted to present value. Although the

trial judge recognized that Dr. Bohatiuk's testimony did not explicitly state that Turner would need medical treatment for this injury throughout his life, he allowed the economist to forecast the cost of lifelong recurring treatments. After reviewing the record, we note that Dr. Bohatiuk implicitly referred to lifelong medical treatment. He testified that Turner suffered a *permanent injury* that would require annual treatments to alleviate pain. Although Dr. Bohatiuk did not say specifically that those treatments would be required throughout Turner's life or work life, that was certainly a fair inference that could be drawn. Therefore, we conclude that the trial judge acted within his discretion when he allowed the jury to hear Dr. Bohatiuk's testimony about future medical treatment and allowed Verzilli to assume so for the purpose of calculating the cost of future lifelong medical care reduced to present value.

■ Second, Porter argues that Verzilli's testimony about Turner's lost income should have been excluded because Verzilli failed to consider income from Turner's "side job" in his projections. Turner admits that Verzilli did not know about Turner's "side business" and thus failed to include it in his analysis. The problem is that the income from Turner's "side business" was itself difficult to quantify. In an attempt to quantify that income, Porter points to the income that Turner earned while he was on a temporary lay-off. That figure, of course, would overstate Turner's

**5.** *M.G. Bancorporation v. Le Beau,* 737 A.2d 513, 522 (Del.1999) (citing *General Electric Co. v. Joiner,* 522 U.S. 136, 141–42, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997)).

**6.** *Garden v. State,* 815 A.2d 327, 338 (Del. 2003), *superseded by statute on other grounds,* 11 *Del. C.* § 4209(d) (2003), *as recognized in Starling v. State,* 882 A.2d 747 (Del.2005), quoting (*Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 152, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999)).

**7.** *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

**8.** *Mason v. Rizzi,* 843 A.2d 695 (Del.2004).

"side business" earning capacity because it was earned at a time when Turner did not work at Chrysler. Turner now works his regular shift but no longer works overtime. Porter never produced any reliable figure to quantify Turner's additional income at his "side job" during the lost overtime hours.

To be sure, Verzilli's failure to include an estimate of income from his "side job" creates some doubt about the accuracy of his assumptions underlying his opinion about future lost income. That failure does not require a wholesale exclusion of his opinion about future lost income, however, Porter's contention that Verzilli's opinion should be barred *in toto* clearly is a misplaced attack on the verifiability of Verzilli's methodology based on *Daubert.* Porter challenges only Verzilli's underlying assumptions, not the methodology that is based on the assumptions. Moreover, by vigorous crossexamination, Porter's counsel could highlight the inaccuracy or unreliability of Verzilli's estimates based on his failure to consider the "side job" income. Porter's counsel could and did attack the validity of the assumptions about Turner's capacity to work that Verzilli relied upon when formulating his ultimate opinion. We note that the jury must have understood the significance of the assumptions' questionable validity, because the jury discounted a portion of Verzilli's projections, and awarded less than Verzilli's combined estimates for future medical care and lost income. We cannot conclude that the trial judge abused his discretion when he allowed Verzilli to rely on Dr. Bohatiuk's opinion on future medical costs or when he admitted Verzilli's opinion on future lost income.

## C. *Insurance*

■ Porter's third claim of error is that the trial judge failed to grant a mistrial because Turner testified that Porter's insurance company refused to pay his physical therapy expenses.

■ We review the trial judge's refusal to order a mistrial and denial of a new trial for abuse of discretion.[9] Under Delaware law, the mention of liability insurance is generally considered to be prejudicial to the defendant:[10]

However, the mention of insurance does not *ipso facto* require a mistrial. Ordinarily, an appropriate instruction to disregard the statement is sufficient to avoid prejudice to the defendant, but an incident may be so flagrant as to require a mistrial. The question is always one for the sound discretion of the trial judge.[11]

This is not a case where a witness simply mentioned insurance. Instead, when Turner testified, he interjected the availability of insurance coverage in a way that suggested that Porter's carrier failed improperly to pay for his medical care. Under the unique facts of this case where punitive damages were already in issue from Porter's conduct, a suggestion that his insurance carrier wrongfully refused to pay for physical therapy as a result of injuries suffered in the accident exacerbated an already problematic scenario. In certain circumstances, a carrier's wilful failure to pay insurance benefits could itself warrant punitive damages.[12] In this case, the trial judge had already ruled that the jury could consider punitive damages

9. *Chavin v. Cope*, 243 A.2d 694, 695 (Del. 1968).

10. *Id.* at 696.

11. *Id.*

12. *See Tackett v. State Farm Fire & Casualty Ins. Co.*, 653 A.2d 254, 265 (Del.1995).

for Porter's potentially reckless behavior. Turner's comment about Porter's insurance company—in this unusual fact situation—might have inflamed and irreparably biased the jury against Porter, causing them to punish him for his insurance carrier's failure to pay Turner's alleged legitimate physical therapy treatment costs. On these facts, we must examine whether the comment was "so flagrant as to require a mistrial." [13]

The trial judge decided that a curative instruction would suffice. The parties crafted an instruction which stated:

> you may have heard the plaintiff mention insurance as a reason for the inability to undertake additional physical therapy. You should be aware that the decision to terminate further physical therapy payments was made by a third party unrelated to the defendant or the plaintiff.

The trial judge found that this cautionary instruction did cure any potential prejudice. Specifically, this instruction at least deflected focus on Porter himself as a cause of an "unrelated third party['s]" failure to pay. In fact, it underscored that Porter was not reasonably responsible for any suggested wrongful refusal to pay for Turner's physical therapy. In these circumstances, we uphold the trial judge's discretion in choosing to give this curative instruction rather than grant a mistrial. The trial judge was in the best position to assess Turner's comment and could best decide, after hearing from counsel, the sufficiency of the instruction intended to cure any prejudice to either party. Therefore, we conclude that the trial judge did not abuse his discretion. He reasonably issued a thoughtful curative instruction *in lieu* of the extreme remedy of a mistrial,

and he correctly denied the motion for a new trial.

## *CONCLUSION*

For the above reasons, the judgment of the Superior Court is **AFFIRMED.**