# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| RICHARD M. CHAMBERLAIN | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. N18C-07-035 SKR |
| | ) | |
| OFFICER GEORGE PYLE | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: January 5, 2023
Decided: February 6, 2023

## ORDER

*Upon Defendant Officer George Pyle's Motions for Judgment as a Matter of Law,*
**DENIED**.

This 6th day of February, 2023, upon consideration of the Defendant's renewed motion for judgment as a matter of law (D.I. 84) and motion for judgment as a matter of law to reduce or vacate punitive damages (D.I. 89), the Plaintiff's responses (D.I. 99 & D.I. 100), and the record in this matter, it appears to the Court that:

(1)     Plaintiff Richard M. Chamberlain filed a complaint against Defendant Department of Corrections Officer George Pyle for alleged tortious acts by Officer Pyle against Mr. Chamberlain during a strip search at Howard R. Young Correctional Institution.

(2)     The action was tried two months ago before a jury. The jury returned

-1-

a verdict finding Officer Pyle intentionally made physical contact with Mr. Chamberlain during the strip search, that the contact was harmful or offensive, that the contact was not made to preserve order, prevent danger, or enforce procedures, that Officer Pyle acted in bad faith, and that Officer Pyle acted with gross or wanton negligence. But the jury did not find that Mr. Chamberlain suffered a non-speculative injury and so it did not award Mr. Chamberlain compensatory damages, but instead a nominal $1.00. The jury did find that Officer Pyle intentionally or recklessly engaged in outrageous conduct and awarded Mr. Chamberlain $15,000 in punitive damages.

(3) Post-trial, Officer Pyle filed a renewed motion for judgment as a matter of law on liability and a like motion seeking to reduce or vacate the punitive damages award. Mr. Chamberlain answered shortly thereafter.

### *Judgement on Liability*

(4) Officer Pyle, represented by the State, renewed his judgment as a matter of law, which was previously denied by the Court, asserting "there was no legally sufficient evidentiary basis for a reasonable jury to find that he failed to comply with the requirements of Delaware's Tort Claims Act ("DTCA") during his strip search of Richard M. Chamberlain."[1]

(5) That statute provides state employees with immunity from civil liability

---

[1] Renewed JMOL at 1, Dec. 8, 2022 (D.I. 84).

in certain circumstances.[2]  Specifically, the DTCA:

> shields State employees, such as the DOC [correctional officers], from civil liability if the State employee's conduct: (1) arose out of and in connection with the performance of official duties involving the exercise of discretion, (2) was performed in good faith, and (3) was performed without gross or wanton negligence.[3]

(6)    A "[p]laintiff must establish the absence of only one of these elements to defeat qualified immunity under the State Tort Claims Act."[4]

(7)    Here, Officer Pyle insists his qualified immunity was not defeated because there was "no legally sufficient evidentiary basis for a reasonable jury to find that Officer Pyle acted in bad faith during Mr. Chamberlain's strip search."[5] According to Officer Pyle, through the State, the only evidence of wrongdoing was that Officer Pyle snapped his gloves, grinned or smirked, and said "it's strip search time."[6]  And he says, that isn't enough.[7]

(8)    Next, Officer Pyle contends the evidence did not show he acted with gross or wanton negligence because, in his view, any physical pain to Mr. Chamberlain was just "momentary discomfort."[8]  Moreover, he says—crediting

---

[2]    DEL. CODE ANN., tit. 10 § 4001 *et seq.* (2017).

[3]    *Wonnum v. Way*, 2017 WL 3168968, at *2 (Del. Super. Ct. July 25, 2017) (citations omitted).

[4]    *Id.* (citations omitted).

[5]    Renewed JMOL ¶ 3.

[6]    *Id.* (citing Trial Tr. at 56, 66, Dec. 8, 2022 (D.I. 87)).

[7]    *Id.*

[8]    *Id.* ¶ 4.

his own testimony—because he reasonably believed he was strictly following DOC procedure, he could not have been acting with gross negligence or with bad faith.[9]

(9)     Motions for judgment as a matter of law are controlled by this Court's Civil Rule 50(a), which reads:

> If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the Court may determine the issue against the party and may grant a motion for judgment as a matter of law. . . .[10]

(10)     Where, as here, the Court denies a mid-trial motion, Rule 50(b) allows the motion to be renewed post-trial.[11]     Viewing the evidence in the light most favorable to the non-moving party, the Court must then determine "whether the evidence and all reasonable inferences that can be drawn therefrom could justify a jury verdict in favor of the Plaintiff."[12]

(11)     "Judgment as a matter of law is appropriate if 'there is no legally

---

[9]     Renewed JMOL ¶¶ 6-7 ("Officer Pyle's interpretation of the policy is vital because it shows that he was not acting in bad faith. Rather, he was merely trying to execute DOC policy according to his own understanding.").

[10]     Super. Ct. Civ. R. 50(a).

[11]     Rule 50(b) provides, in relevant part:

> Whenever a motion for a judgment as a matter of law made at the close of all the evidence is denied or for any reason is not granted, the Court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. . . . If no verdict was returned, the Court may, in disposing of the renewed motion, direct the entry of judgment as a matter of law or may order a new trial.

[12]     *Mumford v. Paris*, 2003 WL 231611, at *2 (Del. Super. Ct. Jan. 31, 2003) (citation and quotation marks omitted).

sufficient evidentiary basis for a reasonable jury to find' for [the] non-moving party."[13] "When considering a motion for judgment as a matter of law, the Court must view the evidence and draw all reasonable inferences 'in a light most favorable to the non-moving party.'"[14] "The moving party bears the burden of demonstrating both the absence of a material fact and entitlement to judgment as a matter of law."[15]

(12)   "When considering a motion for a new trial, the Superior Court must give enormous deference to the jury's verdict, and should not set aside the jury's verdict unless a reasonable jury could not have reached the result."[16]

(13)   "The jury is the sole judge of a witness' credibility and is responsible for resolving conflicts in testimony."[17]   And "it is within the jury's discretion to accept one portion of a witness' testimony and reject another part."[18]   It is the jury, not the judge, who sits as the trier of fact and in doing so is charged with evaluating credibility and weighing evidence.[19]

(14)   At its core this motion—as did the mid-trial motion—asks the Court to

[13]   *LCT Cap., LLC v. NGL Energy P'rs LP*, 249 A.3d 77, 89 (Del. 2021) (quoting Super. Ct. Civ. R. 50(a)).

[14]   *Id.* (quoting *Blue Hen Lines, Inc. v. Turbitt*, 787 A.2d 74, 77 (Del. 2001)).

[15]   *Id.* at 89-90 (quoting *Blue Hen Lines, Inc.*, 787 A.2d at 77).

[16]   *Id.* at 90 (cleaned up).

[17]   *Pryor v. State*, 453 A.2d 98, 100 (Del. 1982) (citing *Tyre v. State*, 412 A.2d 326 (Del. 1980)).

[18]   *Id.* (citing *State v. Matushefske*, 215 A.2d 443 (Del. 1965)).

[19]   *Prince v. Ferritto, LLC*, 2019 WL 6487281, at *3 (Del. Super. Ct. Dec. 2, 2019).

substitute its own factfinding for that of the jury. The testimony of Officer Pyle was that he never touched Mr. Chamberlain, but if he did, he did so in good faith and in a manner consistent with DOC policy.[20] Mr. Chamberlain's account was quite different.[21] Within those two tellings sufficient evidence could be found to support the jury's verdict. It appears the jury could reasonably, and did, reject Officer Pyle's testimony as to both his behavior and his lack of bad faith. And through its own resolution of the starkly accounts found gross and wanton negligence.

(15)    Officer Pyle asks the Court to ignore the jury's credibility determinations and the weight the jury gave the evidence. This the Court cannot do.

(16)    Accordingly, Officer Pyle's renewed motion for judgment as a matter of law on the liability issue (D.I. 84) is **DENIED.**

### *Judgment as a Matter of Law*
### *to Reduce or Vacate the Punitive Damages Awarded*

(17)    Officer Pyle argues the punitive damages award of $15,000 is unconstitutionally excessive and should be vacated or reduced by the Court.[22]

(18)    "[P]unitive damages seek to punish the defendant for behavior and

---

[20]    Officer Pyle's defense to Mr. Chamberlain's charges was that he never touched Mr. Chamberlain. Trial Tr. at 144 ("Q. And it's your defense today that you didn't touch him, but if you did touch him that would be in compliance with the policy, correct? A. Correct. I did not touch him but if he did refuse I would be allowed to spread them."). In this post-trial motion, Officer Pyle argues, as he must, that he did not act in bad faith or with gross or wanton negligence in performing an action he himself denies happened. *See* Renewed JMOL ¶¶ 6-7.

[21]    Trial Tr. at 57-58.

[22]    JMOL at 1, Dec. 8, 2022 (D.I. 89).

conduct that is considered egregious, reckless, reprehensible, or filled with malice."[23] "Under Delaware law, punitive damages are recoverable where the defendant's conduct exhibits a wanton or wilful disregard for the rights of the plaintiff. For a defendant's conduct to be found wilful or wanton, the conduct must reflect a conscious indifference or 'I don't care' attitude."[24] So here, the Court must determine "whether the facts presented at trial provided a sufficient basis" for the jury to conclude Officer Pyle exhibited wanton or wilful disregard for Mr. Chamberlain's rights.[25]

(19) Here the Court takes guidance from the United States Supreme Court's decision in *State Farm Mutual Auto Insurance Company v. Campbell*.[26] In *Campbell*, the Court found there was no bright-line compensatory-to-punitive damages ratio but suggested that a ratio of more than a single digit might not survive due process review.[27] Later, the Supreme Court in *Exxon Shipping Co. v. Baker*[28] noted that punitive damages could be higher if nominal, as opposed to compensatory,

---

[23] *Williams v. Manning*, 2009 WL 960670, at *12 (Del. Super. Ct. Mar. 13, 2009) (citing *Jardel Co., Inc. v. Hughes*, 523 A.2d 518, 528-29 (Del. 1987)).

[24] *Porter v. Turner*, 954 A.2d 308, 312 (Del. 2008) (cleaned up).

[25] *Id.* (citing *Cloroben Chem. Corp. v. Comegys*, 464 A.2d 887, 891 (Del. 1983)).

[26] 538 U.S. 408 (2003); *DeLucia v. Great Stuff, Inc.*, 2015 WL 5157127, at *4 (Del. Super. Ct. Apr. 10, 2015) (applying *Campbell*).

[27] 538 U.S. at 425.

[28] 554 U.S. 471 (2008).

damages were awarded.[29]

(20)    When analyzing a punitive damages award, *Campbell* instructs courts to consider whether:

> [1] the harm caused was physical as opposed to economic; [2] the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; [3] the target of the conduct had financial vulnerability; [4] the conduct involved repeated actions or was an isolated incident; and [5] the harm was the result of intentional malice, trickery, or deceit, or mere accident.[30]

(21)    The *Campbell* Court went on to conclude that because "[i]t should be presumed a plaintiff has been made whole for his injuries by compensatory damages, . . . punitive damages should only be awarded if the defendant's culpability, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence."[31]

(22)    Examining these factors, the Court finds that the first factor weighs in favor of Mr. Chamberlain because the harm caused was physical (though transitory), mental, and emotional.  Officer Pyle argues that this factor should weigh against Mr. Chamberlain because he "did not suffer *any* injury."[32]  But *Campbell* asks

---

[29]  *Id.* at 494 (citing *BMW of North Am., Inc. v. Gore*, 517 U.S. 559, 582 (1996)); *see also Jester v. Hutt*, 937 F.3d 233, 242 (3d Cir. 2019) ("both *Gore* and [*Campbell*] strongly suggest that following this guidepost does not apply to nominal awards").

[30]  *Campbell*, 538 U.S. at 419 (citing *Gore*, 517 U.S. at 576-77).

[31]  *Campbell*, 538 U.S. at 419 (citing *Gore*, 517 U.S. at 575).

[32]  JMOL ¶ 4 (emphasis in original).

whether the harm was physical vs. economic; here the harm was clearly physical (as well as emotional) as opposed to pecuniary. The second factor weighs in favor of Mr. Chamberlain as the jury could have found Officer Pyle's conduct evidenced recklessness or indifference to the health and safety of all detainees at Howard R. Young Correctional Institution, not just Mr. Chamberlain himself. The third factor does not favor Mr. Chamberlain—this case had nothing to do with financial vulnerability. The fourth factor, arguably does, but not strongly, favor Mr. Chamberlain because only one act was alleged against Officer Pyle here—though there was some testimony it was one act in an alleged pattern of abuses by the correctional officer. The fifth factor is on Mr. Chamberlain's side because the jury could have found that the harm to Mr. Chamberlain was the result of intentional malice. In sum, no less than three of the five factors weigh in favor of awarding punitive damages; so the Court is satisfied some award of punitive damages was appropriate.

(23) But Officer Pyle challenges not just that punitives were awarded, he charges too that the punitive damages sum of $15,000 is excessive.

(24) Under Delaware law, "[r]emittitur is required only when the award of damages is so excessive that it must have been based on passion, prejudice or misconduct, rather than on objective consideration of evidence presented at trial."[33]

---

[33] *Barba v. Boston Sci. Corp.*, 2015 WL 6336151, at *9 (Del. Super. Ct. Oct. 9, 2015).

Under *BMW of North America, Inc. v. Gore*, "[p]erhaps the most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct."[34]

(25) The United States Court of Appeals for the Third Circuit has endorsed the approach of comparing "punitive awards in similar cases" to "help [federal] district courts assess the reasonableness of a punitive award when only nominal damages are given."[35]

(26) In examining similar cases cited by both parties,[36] other jurisdictions have approved punitive damages awards ranging from $5,000 and $20,000 for similar acts by correctional officers to be reasonable, with the range attributable to reprehensibility.[37] The punitive damages award here is well within that comparative range and the Court cannot find it unconstitutionally excessive.

(27) Nor should the Court otherwise remit a jury's punitive damages award

---

[34] 517 U.S. at 575; *see Powell v. AmGuard Ins. Co.*, 2020 WL 996734, at *9 (Del. Super. Ct. Mar. 2, 2020) (finding Delaware Courts have used *Gore* as a guidepost for evaluating punitive damages).

[35] *Jester*, 937 F.3d at 243.

[36] *See e.g., Drumgo v. Kuschel*, 2022 WL 3646349, at *1 (D. Del. Aug. 24, 2022) (grabbing and holding genitals); *Cleveland v. Curry*, 2014 WL 690846, at *1 (N.D. Cal. Feb. 21, 2014) (groping and squeezing genitals); *Shepherd v. Fischer*, 2018 WL 3122053, at *2 (S.D.N.Y. June 26, 2018) (ramming metal wand into buttock).

[37] *See e.g., Drumgo*, 2022 WL 3646349, at *6 (remitting $500,000 punitive damages award where nominal damages were awarded to $5,000); *Curry*, 2014 WL 690846, at *1 (remitting $20,000 punitive damages award where nominal damages were awarded to $5,000); *Shepherd*, 2018 WL 3122053, at *1, 8 (leaving intact punitive damages award of $20,000 where nominal damages were awarded).

unless it was "based on passion, prejudice or misconduct, rather than on objective consideration of evidence presented at trial."[38] No argument has been presented that the jury's verdict was based on passion, prejudice, or misconduct. Instead, Officer Pyle argues only that it is invalid under the due process clause. But again, when comparing other punitive damages awards for similar actions the Court finds it is no doubt within an acceptable range. And given the evidence presented at trial, the jury could reasonably have found Officer Pyle acted wilfully or wantonly against Mr. Chamberlain.

(28)  Accordingly, Officer Pyle's motion for judgment as a matter of law to reduce or vacate punitive damages (D.I. 89) is **DENIED.**

**SO ORDERED this 6th day of February, 2023**.

**Paul R. Wallace, Judge**

Original to Prothonotary
cc:     All counsel via File & Serve

---

[38]  *Barba*, 2015 WL 6336151, at *9.