ESTATE OF Alberta RAE, Deborah J. Rae, Individually and as Co-Executrix and Bonnie Rae, Individually and as Co-Executrix, Appellants, Plaintiffs Below,

v.

Wade S. MURPHY and The Delaware Hospital for the Chronically Ill and The State of Delaware, Jointly and Severally, Appellees, Defendants Below.

No. 174, 2007.

Supreme Court of Delaware.

Submitted: July 9, 2008.
Decided: Aug. 26, 2008.

Jeffrey M. Weiner, Wilmington, DE, for appellants.

Marc P. Niedzielski, Department of Justice, Wilmington, DE, for appellee State of Delaware.

Michael W. Modica, Wilmington, DE, for appellee Wade S. Murphy.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices constituting the court en banc.

STEELE, Chief Justice:

Alberta Rae died in a car collision with Wade Murphy, defendant-appellee. Rae's estate brought a survival action, seeking compensatory and punitive damages, and her daughters brought a wrongful death suit in Superior Court. A Superior Court judge granted partial summary judgment on the punitive damages claim ruling that the evidence did not demonstrate wilful or wanton conduct. After trial, a jury found that Rae did not have any conscious interval of suffering and, thus, did not award Rae's estate any damages for the survival action. The jury did award each daughter $20,000 for wrongful death.

On appeal, the plaintiff-appellants argue that the trial judge erred by granting partial summary judgment for defendants on the punitive damages claim. In this case, the evidence showed that Murphy, as he approached an intersection, had turned his head to describe a vehicle operating erratically on the highway to his passenger, who was talking on a mobile phone with a 911 dispatcher. While distracted, Murphy failed to notice that the traffic signal ahead of him had turned red, failed to stop, and then struck the decedent's car causing her death. We conclude that the trial judge correctly concluded these facts do not rise to the level of wilful and wanton conduct necessary to support a punitive damages claim.

The plaintiff-appellants also argue that the trial judge erred at trial by: limiting the testimony of Rae's expert witness, not allowing the plaintiff-appellants to use the defendants' original pleadings for impeachment purposes, and denying the plaintiff-appellants' motion for a new trial or additur. We conclude that the trial judge did not commit any error. Therefore, we **AFFIRM.**

### FACTS

In April 2004, Alberta Rae, 75 years old at the time, died in an automobile collision when Wade Murphy, while in the course of his employment driving a van for the Delaware (State) Hospital for the Chronically Ill, struck Rae's car. The accident occurred when Murphy failed to stop at a red light on Route 299. The passenger in Murphy's van had called a 911 dispatcher on a mobile phone to report that a car they had seen on Route 1 appeared to be operated by a driver who was nodding off while transporting children. Murphy had taken his eyes off the road for a few seconds to turn to his passenger to assist her in describing the car they had seen on Route 1. During this interval, Murphy failed to notice that the light he was approaching on Route 299 had turned red. Murphy estimated that he drove between 50 miles per hour, the posted speed limit, and as fast as 55 miles per hour. Murphy's van then struck Rae's car.

Rae's daughters brought a wrongful death action, and Rae's estate brought a personal injury action, against defendant-appellees pursuant to Delaware's survival statute. The plaintiff-appellants claimed that Murphy drove his car negligently, grossly negligently, and wilfully and wantonly. Plaintiffs also sought recovery from Murphy's employer, the Hospital, and the State (together, the State defendants). Plaintiff-appellants sought compensatory

damages, punitive damages, interest, and costs.

Initially, all defendants were represented by the same counsel. In their answer, the defendants denied that Murphy had operated his vehicle in a negligent or grossly negligent manner, or wilfully and wantonly. During discovery, it became apparent that Murphy's interests in the litigation might be adverse to the State defendants. Murphy sought leave to be represented by separate counsel. A Superior Court judge granted that motion in June 2005. In December 2005, the State and the Hospital moved to amend their answer and admitted Murphy's negligence. In the order granting the motion to amend, the trial judge made the following handwritten notation: "Plaintiff will not be permitted to use the initial answer for impeachment of defendants absent an order from the trial judge after a proffer."

In February 2006, Murphy and the State defendants moved for partial summary judgment on the issue of punitive damages because, they argued, plaintiff-appellants had not presented evidence of wilful or wanton conduct. The judge granted summary judgment on the punitive damages claim.[1] The State defendants also moved for summary judgment, arguing that there was no evidence of conscious pain and suffering to support the personal injury survival claim, and moved *in limine* seeking to bar the testimony of plaintiff-appellants' expert Dr. Roh. They contended that Dr. Roh, a forensic pathologist, was "unqualified to offer an opinion on whether the decedent suffered any conscious pain and suffering." The trial judge denied the summary judgment motion on the survival claim and held that there were

material facts in dispute relating to conscious pain and suffering, because "[b]oth [parties] will offer experts at trial to support each respective theory."[2]

In September 2006, the parties took a videotaped deposition of Dr. Roh because he was unable to appear for trial. In that deposition, Dr. Roh testified about certain prominent cases that he had investigated to determine the cause of death. The trial was rescheduled, and Dr. Roh ultimately testified live at trial. Before he testified, the State defendants objected to Dr. Roh's prospective testimony about the high profile cases that he discussed during his videotaped deposition. The trial judge sustained the State's objection and ruled from the bench that the testimony was irrelevant unless the defense challenged his qualifications on cross-examination.

At the conclusion of trial, the jury found that Rae had not suffered "some interval of conscious pain and suffering" before her death and awarded no compensatory damages on the personal injury survival action. However, the jury awarded Bonnie and Deborah $20,000 each as damages for the wrongful death claim.

The plaintiff-appellants moved for a new trial and additur. The trial judge denied that motion.[3] This appeal followed.

## DISCUSSION

### 1. *Punitive Damages*

▆▆▆ Plaintiff-appellants first argue that the trial judge erroneously granted the defendants' motion for summary judgment on their punitive damages claim. We review a trial judge's grant of summary judgment *de novo* "to determine whether, viewing the facts in the light

---

1. *Estate of Rae v. Murphy,* 2006 WL 1067277, at *1–3 (Del.Super.).

2. *Id.* at *5.

3. *Estate of Rae v. Delaware Hosp. for Chronically Ill,* 2007 WL 1065048 (Del.Super.).

most favorable to the nonmoving party, the moving party has demonstrated that there are no material issues of fact in dispute" and that the moving party is entitled to judgment as a matter of law.[4]

██ The availability of punitive damages turns on whether plaintiff-appellants established a prima facie case that Murphy's driving exhibited a wilful and wanton disregard for the safety of others.[5] "For a defendant's conduct to be found wilful or wanton, the conduct must reflect a 'conscious indifference' or 'I don't care' attitude."[6] Where the evidence only supports a negligence claim, summary judgment is appropriate.[7]

In our recent decision in *Porter*, we found that the plaintiff had introduced sufficient evidence to defeat a directed verdict, because the evidence that had been introduced would permit the jury to conclude that the defendant's conduct rose to the level of wilful and wanton conduct. In that case, the plaintiff introduced evidence that the defendant "faced a red light for *eight seconds* and, nevertheless, *accelerated* his *tractor trailer* through the intersection."[8] In particular, we held that the "testimony established more than Porter merely carelessly disregarding a red light

at a controlled intersection where other traffic was present."[9] By corollary, however, failing to see a red light without more does not establish wilful and wanton conduct to justify a punitive damages award.[10]

Here, unlike in *Porter*, the evidence showed that Murphy, driving slightly over the posted speed limit, simply failed to notice the red light as he approached it. The plaintiff-appellants' evidence demonstrated that Murphy was negligent when he turned toward his passenger to describe the vehicle that he saw on Route 1. By turning his head for those several seconds, Murphy failed to notice that the traffic light that he was approaching had turned red. The plaintiff-appellants argue that Murphy drove recklessly because he was familiar with Route 299 and should have been aware that he was approaching a light.

Even though Murphy may have been driving as fast as five miles per hour over the posted speed limit on a familiar road, these facts alone do not elevate the culpability of his conduct from negligence to the level of "conscious indifference" or exhibit an "I don't care" attitude. Instead, the evidence showed that Murphy imprudently diverted his attention in order to help alert

**4.** *Green v. Weiner*, 766 A.2d 492, 494 (Del. 2001).

**5.** *Porter v. Turner*, 954 A.2d 308, 2008 WL 2474770, at *3 (Del.2008).

**6.** *Id.* (quoting *Cloroben Chem. Corp. v. Comegys*, 464 A.2d 887, 891 (Del.1983) (citations omitted)).

**7.** *See Jardel Co. v. Hughes*, 523 A.2d 518, 530 (Del.1987).

**8.** *Id.*

**9.** *Id.*

**10.** *See Westray v. Wright*, 834 N.E.2d 173, 181 (Ind.Ct.App.2005) (reversing a jury award of punitive damages because the defendant truck

driver's conduct, looking away for 10 seconds while approaching the intersection and not noticing a red light, did not support a jury award of punitive damages); *Austin v. Disney Tire Co.*, 815 F.Supp. 285, 289 (S.D.Ind.1993) (affirming a grant of summary judgment because the defendant's conduct, a truck driver looking down while approaching an intersection and failing to stop at a red light, did not rise to the level of culpable conduct to support punitive damages); *Cullen v. Novak*, 201 Ga.App. 459, 411 S.E.2d 331, 332 (1991) (reversing a jury award of punitive damages because the conduct at issue, negligently running a red light, did not support an award of punitive damages);.

police about a woman who was falling asleep at the wheel with children in her car on Route 1. Although Murphy could have achieved that same goal while maintaining diligent attention to the road in front of him, his actions are consistent with carelessness, but not reckless or wilful and wanton conduct. Therefore, the trial judge properly granted summary judgment barring the punitive damages claim.

### 2. Plaintiff–Appellants' Expert's Testimony

 Next, the plaintiff-appellants' argue that the trial judge improperly limited Dr. Roh's testimony. We review evidentiary rulings restricting or allowing expert testimony for abuse of discretion.[11]

"Evidence which is not relevant is not admissible."[12] Here, the excluded evidence was testimony about Dr. Roh's other cases. Because those cases were not relevant to this case, the trial judge did not abuse his discretion when he limited Dr. Roh's testimony about his other cases.

The trial judge indicated that the plaintiff-appellants offered no relevant fact that would aid the jury in determining whether the decedent survived the impact of the crash. The court held that Dr. Roh could, however, discuss those prominent cases if his qualifications were challenged during cross-examination. Despite the trial judge's decision, plaintiff-appellants did not seek to introduce Dr. Roh's prominent cases on redirect after his qualifications were challenged. We conclude that the trial judge properly exercised his discretion in limiting Dr. Roh's testimony.

Plaintiff-appellants also argue that defense counsel's statements about Dr. Roh

during summation were improper. During summation, defense counsel noted that people with brain injuries would not go to Dr. Roh and that he was not qualified in "understanding of levels of consciousness." However, plaintiff-appellants' did not object to these statements. Under Supreme Court Rule 8, "only questions fairly presented to the trial court may be presented for review," unless the interest of justice requires its consideration.[13] The interests of justice do not require that we consider this argument on appeal. The jury instructions contained the customary admonition that attorneys' comments are not evidence. We assume the jury followed those instructions in the absence of any suggestion to the contrary.

### 3. Impeachment

 The plaintiff-appellants also contend that the trial judge erred by not permitting their use of the defendants' initial answer for impeachment purposes. We review limitations on the examination of witness for abuse of discretion.[14]

Although the defendants' initial answer denied Murphy's negligence, the State defendants' amended answer admitted his negligence. In a pretrial order, the trial judge wrote that plaintiff-appellants' could not "use the initial answer for impeachment of defendants absent an order from the trial judge after a proffer." This ruling did not preclude using the initial answer for impeachment; rather, the trial judge indicated that plaintiff-appellants would need to make a proffer before attempting to do so. The trial judge established this prophylactic protocol to assure that before the jury heard the proffered

---

11. Sammons v. Doctors for Emergency Servs., P.A., 913 A.2d 519, 528 (Del.2006).

12. D.R.E. 402.

13. See AT&T Corp. v. Lillis, 953 A.2d 241, 2008 WL 2151436 at *8 (Del.2008).

14. Jones v. State, 940 A.2d 1, 7 (Del.2007).

impeachment evidence, both sides could address the implications of the change in position from a denial to an admission of negligence.

██ Here, the plaintiff-appellants never made a proffer at trial, nor did they renew their application to introduce the original pleadings in order to challenge the defendants' change in position. Thus, the only issue is whether the trial judge abused his discretion by reserving his ruling on the admissibility or use of the amended answer until the issue became relevant at trial. As with an *in limine* ruling, which may be subject to change as the case unfolds, the trial judge has discretion "to defer ruling on evidentiary issues until the evidence is actually offered for admission."[15] We find that the trial judge did not abuse his discretion by doing so here.

### 4. *The Motion for a New Trial or Additur*

██ Finally, the plaintiff-appellants contend that the trial judge erred by denying their motion for a new trial or additur. We review a denial of a motion for a new trial for abuse of discretion.[16] We will find an abuse of discretion "if the jury verdict was against the great weight of evidence, no reasonable jury could have reached the result, and the denial was untenable and unreasonable."[17] Likewise, we review a denial of a motion for additur for abuse of discretion.[18] A trial judge confronted with a motion for additur must review the rec-

ord and determine if the damages awarded by the jury are "within a range supported by the evidence" and should vacate the jury award only if it is "so grossly out of proportion to the injuries suffered as to shock the Court's conscience and sense of justice."[19]

The damages awarded in this case were for wrongful death. Public policy contemplates that wrongful death actions will compensate a decedent's surviving loved ones for their loss resulting from the decedent's death.[20] Here, the judge instructed the jurors that they could consider loss of monetary benefits, loss of parental and household services, and mental anguish when determining damages. The jurors were further instructed that "there is no fixed standard or measurement."

The jury award $20,000 each to both of Rae's daughters. Rae and her daughters lived together. Rae was 75 with a life expectancy of twelve years. Although she was retired, she helped with household chores. Both daughters were diagnosed with depression after the accident, prescribed medication, and attended grief counseling.

We afford "enormous deference" to jury verdicts.[21] The jury award here shocks no reasonable person's conscience given the actual evidence presented and falls within a rational range consistent with that evidence. Thus, the trial judge did not abuse

---

**15.** *Dawson v. State*, 581 A.2d 1078, 1087 (Del. 1990) (quoting *United States v. Burkhead*, 646 F.2d 1283, 1286 (8th Cir.1981), *vacated on other grounds*, 503 U.S. 159, 112 S.Ct. 1093, 117 L.Ed.2d 309 (1992)).

**16.** *Wilhelm v. Ryan*, 903 A.2d 745, 755 (Del. 2006).

**17.** *Id.* (citations omitted).

**18.** *Id.* at 753.

**19.** *Wilhelm*, 903 A.2d at 754 (citations omitted).

**20.** *See Emmons v. Hartford Underwriters Ins. Co.*, 697 A.2d 742, 744 (Del.1997) (citing *Thompson v. D'Angelo*, 320 A.2d 729, 733 (Del.1974)).

**21.** *Young v. Frase*, 702 A.2d 1234, 1236 (Del. 1997).

his discretion by denying the motion for new trial and additur.

### CONCLUSION

Now, therefore, it is ordered that the judgment of the Superior Court is **AFFIRMED**.