IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| LAWRENCE P. GILLEN, | § | |
| | § | |
| Plaintiff Below, | § | No. 227, 2014 |
| Appellant, | § | |
| | § | |
| v. | § | Court Below: Superior Court |
| | § | of the State of Delaware, |
| CONTINENTAL POWER | § | in and for New Castle County |
| CORPORATION and EDWARD | § | C.A. No. N10C-05-090 (PRW) |
| HENRY KIMMEL | § | |
| | § | |
| Defendants Below, | § | |
| Appellees. | § | |

Submitted: September 12, 2014
Decided:  November 18, 2014
Corrected: November 19, 2014

Before **HOLLAND**, **RIDGELY**, and **VALIHURA** Justices.

## **O R D E R**

This 18th day of November 2014, upon consideration of the parties' briefs and the record on appeal, it appears to the Court that:

(1)    The plaintiff-appellant, Lawrence P. Gillen, filed this appeal from a Superior Court jury's verdict in favor of the defendants-appellees, Continental Power Corporation ("Continental") and Edward Henry Kimmel, the Superior Court's April 7, 2014 opinion and order denying Gillen's motion for a new trial, and the Superior Court's April 8, 2014 order awarding the defendants $2,997.69 in attorneys' fees and costs.  We affirm the judgment of the Superior Court.

(2)     The record reflects that Gillen and Kimmel met in the fall of 2007. Gillen sold power conditioning systems and Kimmel was the founder, president, and sole stockholder of Continental, a Delaware corporation that sold power conditioning systems for residential and commercial use.    Gillen initially purchased power conditioning systems from Continental and resold the systems to his own customers, primarily EcoQuest.    In 2008, Gillen became an independent manufacturer's sales representative for Continental.    After Ecoquest filed for bankruptcy, the relationship between Gillen and Kimmel gradually deteriorated.

(3)     In April 2010, Gillen filed a *pro se* complaint against Continental and Kimmel.    Gillen alleged that he, Kimmel, and Continental "entered into an agreement in October 2007 whereby they agreed to be 50/50 partners in the distribution and installation in energy savings devices in residence and commercial property in Delaware and other locations" and that he did not receive 50% of the profits as the parties had agreed.[1]   Gillen asserted claims for breach of contract, tortious interference, fraud, and defamation.    In October 2012, the Superior Court granted the defendants' motion for summary judgment on the tortious interference, fraud, and defamation claims, but denied the motion with respect to the breach of contract claim.

---

[1] Appellant's Appendix at A56 ¶¶ 4, 8, 11.

(4)     In July 2013, Gillen retained counsel, who requested a continuance of the September 2013 trial dates so that a particular witness could attend the trial and counsel could familiarize himself with the case.  The Superior Court granted the motion and re-scheduled the trial to begin on October 28, 2013.  On September 30, 2013, Gillen's counsel moved to withdraw.  The Superior Court granted the motion and denied Gillen's request for another continuance.

(5)     Gillen then retained new counsel, who requested a continuance so he could prepare for the trial.  Counsel also later informed the Superior Court that he had a scheduling conflict on the last day of trial.  The Superior Court granted the motion for a continuance over the objections of the defendants and re-scheduled the trial to begin on December 4, 2013.  The Superior Court bifurcated the trial so that the trial would proceed on liability only, with a hearing on damages to be scheduled if necessary.  The jury returned a verdict in favor of the defendants.

(6)     Gillen filed a motion for a new trial and his counsel moved to withdraw.  The Superior Court granted the motion to withdraw and denied the motion for a new trial.   The Superior Court awarded the defendants $2,997.69 for attorneys' fees and costs they incurred in responding to the second motion for a continuance and preparing another pretrial stipulation.  This appeal followed.

(7)     Gillen's arguments on appeal may be summarized as follows: (i) the Superior Court judge erred in not recusing himself; (ii) the Superior Court erred in

3

allowing the admission of Gillen's prior criminal convictions in Florida and failed to provide a limiting instruction to the jury; (iii) the Superior Court erred in limiting the theory of liability presented at trial and in instructing the jury; (iv) the Superior Court erred in limiting the testimony of Leo Rammuno, Esq. and excluding correspondence written by Kimmel; (v) the Superior Court erred in denying his motion for a new trial; and (vi) the Superior Court erred in awarding the defendants' $2,997.69 in attorneys' fees and costs.

(8) At a September 23, 2013 hearing on Gillen's motion *in limine* to preclude the use of his criminal convictions at trial, the Superior Court judge (who had replaced the original judge in July 2013) notified the parties that he had learned that he was the prosecutor for driving charges brought against Gillen in the early 1990s as well as a misuse of credit card charge brought in 1994. The Superior Court judge noted that neither of these matters would be admissible under Rule 609 of the Delaware Rules of Evidence ("D.R.E.") because they were misdemeanors or subject to *nolle prosequi*. He also stated that he had no recollection of the charges. Although the Superior Court judge believed he could be fair and impartial, he stated that he wanted to give Gillen's counsel the opportunity to consider whether he wished to file a motion for recusal.

(9) Gillen's counsel did not file a motion for recusal. At the October 14, 2013 hearing on the motion to withdraw filed by Gillen's first counsel, Gillen

4

asked if he could file a motion for recusal. The Superior Court judge indicated that he was unlikely to grant such a motion based on his previous analysis, but he would consider a written motion if filed by the close of business on October 16, 2013. Gillen did not file a motion for recusal, but complained in his motion for a new trial that the Superior Court judge refused to recuse himself. The Superior Court judge rejected this argument and concluded that he was not required to recuse himself.

(10) When deciding whether to recuse himself, a judge engages in a two-part analysis. First, the judge must be satisfied, as a matter of subjective belief, that he can hear the matter free of bias or prejudice.[2] Second, even if the judge believes he is free of bias or prejudice, he must objectively consider whether the circumstances require recusal because there is an appearance of bias sufficient to cast doubt on the judge's impartiality.[3] On appeal, we review the subjective analysis for abuse of discretion and the objective analysis *de novo*.[4]

(11) In denying Gillen's motion for a new trial, the Superior Court engaged in the two-part analysis for recusal. The Superior Court judge noted that Gillen never filed a motion for recusal, the Delaware charges for which he was the

---

[2] *Los v. Los*, 595 A.2d 381, 384-85 (Del. 1991).

[3] *Id.* at 385.

[4] *Fritzinger v. State*, 10 A.3d 603, 611 (Del. 2010).

5

prosecutor were not admissible under Rule 609, and he had no recollection of the charges. The Superior Court judge concluded, as a matter of subjective belief, that he could and did hear the matter free of bias or prejudice and that an objective observer would not question his impartiality.

(12) Gillen contends that there was an appearance of bias because the Superior Court judge learned he was the prosecutor for two of the Delaware convictions by researching Gillen's Delaware criminal history (which was described in the pardon accompanying Gillen's motion *in limine*). We disagree. The Superior Court judge did not create an appearance of impropriety by discovering the potential issue (an issue that Gillen relies upon in his appeal) and promptly informing the parties. Under the circumstances, we do not discern any abuse of discretion in the Superior Court's subjective analysis nor, after *de novo* review, do we discern any appearance of bias sufficient to cast doubt on the Superior Court judge's impartiality.

(13) Gillen next argues that the Superior Court erred in allowing the admission of his credit card fraud and felony larceny criminal convictions in Florida for impeachment purposes. The Superior Court granted Gillen's motion *in limine* to exclude evidence of his Delaware convictions (which had been pardoned), but denied the motion with respect to his Florida convictions. This

Court reviews evidentiary rulings for abuse of discretion.[5] "An abuse of discretion occurs when 'a court has ... exceeded the bounds of reason in view of the circumstances, [or] ... so ignored recognized rules of law or practice so as to produce injustice.'"[6]

(14) The Florida convictions occurred in 1992 and were therefore more than ten years old. Under Rule 609(b), evidence of a conviction more than ten years old is not admissible unless the Superior Court "determines, in the interests of justice, that the probative value of the conviction supported by the specific facts and circumstances substantially outweighs its prejudicial effect."[7] Having carefully reviewed the record, we conclude that the Superior Court's decision did not amount to an abuse of discretion. The Superior Court properly applied Rule 609(b) and concluded that the probative value of the Florida convictions substantially out weighed the prejudicial effect in this case because the jury had to determine whether the parties had an oral agreement as alleged by Gillen and Gillen's credibility was important to this determination. The *Marvel v. Snyder*[8] decision that Gillen relies upon is inapposite as it involved a prisoner convicted of

---

[5] *Cuonzo v. Shore*, 958 A.2d 840, 845 (Del. 2008).

[6] *Lilly v. State*, 649 A.2d 1055, 1059 (Del.1994) (quoting *Firestone Tire & Rubber Co. v. Adams*, 541 A.2d 567, 570 (Del.1988)).

[7] D.R.E. 609(b).

[8] 2003 WL 22134838 (D. Del. Sept. 9, 2003).

7

sexual crimes and assault who brought a prisoner civil rights action against the Department of Correction, not a businessman convicted of credit card fraud and larceny who claimed to have an oral agreement with another businessman.

(15) Gillen also contends that the Superior Court erred by failing to give a limiting jury instruction regarding his Florida criminal convictions. There is no indication that Gillen ever requested a limiting jury instruction so we review this claim for plain error.[9] "Under the plain error standard of review, the error complained of must be so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process."[10] Gillen has not shown that the lack of an instruction cautioning the jurors to limit their consideration of the Florida convictions to his credibility clearly prejudiced his substantial rights or jeopardized the fairness and integrity of the trial process. Accordingly, the lack of such an instruction did not constitute plain error.

(16) Gillen next argues that the Superior Court erred in limiting the scope of the trial and the jury instructions to consideration of whether the parties entered into an agreement forming a partnership in October 2007. According to Gillen, his case was not limited to whether the parties formed a partnership in October 2007,

---

[9] Supr. Ct. R. 8; *Dougherty v. State*, 21 A.3d 1, 6 (Del. 2011); *Beebe Med. Ctr., Inc. v. Bailey*, 913 A.2d 543, 555 (Del. 2006).

[10] *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986).

8

the jury could have found the parties entered into a commission relationship in April 2008, and the Superior Court should not have denied his request for a promissory estoppel instruction. We review the denial of a requested jury instruction *de novo*.[11]

(17) Before the trial started, the defendants objected to Gillen's attempt to include jury instructions for promissory estoppel and other non-partnership agreement theories of liability because the case was pled and defended as a breach of a partnership agreement for more than three years. Based upon its prior rulings, the complaint, how the case was litigated, and the lack of a motion to amend the complaint, the Superior Court concluded that the only remaining issue for the jury was whether the parties entered into an agreement in October 2007 whereby they agreed to be 50/50 partners in the distribution and installation of energy savings devices in residential and commercial property in Delaware. The jury was instructed to decide if Gillen and Kimmel or Gillen and Continental entered into a partnership agreement in October 2007 whereby they agreed to be 50/50 partners in the distribution and installation of energy saving devices in residential and commercial properties.

(18) In support of his argument that the Superior Court erred in limiting the scope of the trial and instructing the jury, Gillen points to allegations in his

---

[11] *Sammons v. Doctors for Emergency Servs., P.A.*, 913 A.2d 519, 540 (Del. 2006).

complaint that he was owed 50% of the profits from jobs performed by the parties as well as commissions, Kimmel's trial testimony that there was a commission relationship between the parties (rather than a partnership) beginning in 2008, and Gillen's *pro se* status throughout most of the litigation. The complaint includes allegations that the parties "entered into an agreement in October 2007 whereby they agreed to be 50/50 partners in the distribution and installation in energy savings devices in residence and commercial property in Delaware and other locations,"[12] the parties were "actively engaged in their partnerships" and sharing profits on a 50/50 basis,[13] and the "partnership sold units to a multi-level marketing firm know as Ecoquest and was sharing those profits as well on a 50/50 basis."[14] Throughout the summary judgment papers, Gillen argued that the parties entered into an oral partnership agreement in October 2007. When the Superior Court denied the defendants' motion for reconsideration of the denial of their motion for summary judgment on the breach of contract claim, it recognized that it had previously found there was a genuine issue of material fact "regarding the specifics of the alleged 50/50 partnership agreement."[15] Given the record in this case, the

---

[12] Appellant's Appendix at A56 ¶ 4.

[13] *Id.* at A57 ¶ 6.

[14] *Id.*

[15] Superior Court Docket Entry No. 170.

10

Superior Court did not err in limiting the theory of liability presented by Gillen at trial or in instructing the jury. *Pro se* litigants are generally granted some leeway in preparing and presenting their cases, but the Superior Court was not required to "sacrifice the orderly and efficient administration of justice" to accommodate Gillen.[16]

(19) Gillen next argues that the Superior Court erred in limiting the testimony of Leo Ramunno, Esq. and excluding correspondence written by Kimmel in the course of the parties' attempts to settle their disputes, with Ramunno's assistance, in April 2010. Ramunno, who was a friend of Gillen and represented him in various matters over the years, began representing Continental in 2008 or 2009. In June 2010, Ramunno withdrew from representing Continental in a Court of Chancery action.

(20) The defendants filed a motion *in limine* to preclude Ramunno from testifying about matters subject to the attorney-client privilege and/or work product doctrine and the parties' efforts to compromise their disputes in April 2010. Gillen sought to introduce testimony from Ramunno that: (1) he heard Kimmel make a toast referring to Gillen as his partner and their partnership at a dinner in 2008, before Continental retained Ramunno, with a number of other, non-Continental affiliated people; (2) he heard Kimmel and Gillen refer to each other as partners

---

[16] *Draper v. Med. Ctr. of Delaware*, 767 A.2d 796, 799 (Del. 2001).

and their partnership in conversations they had with Ramunno or in Ramunno's presence regarding litigation brought by or against Continental and an Ecoquest employee who became an independent manufacturer's sales representative for Continental after Ramunno was retained by Continental; and (3) he had knowledge of the parties' business relationship as a result of trying to help them settle their disputes in April 2010. The Superior Court permitted Ramunno to testify about the toast at the 2008 dinner, but did not allow him to testify about the other communications. The Superior Court also excluded the April 2010 correspondence Kimmel sent in the course of the parties' settlement negotiations.

(21) The Superior Court concluded that the communications were privileged under Rule 502 because they were made in the rendition of legal services and meant to be confidential between Continental and its sales agents. The Superior Court also found that statements Kimmel made during the parties' April 2010 settlement negotiations (which included oral and written statements) were inadmissible under Rule 408 because the statements were made in compromise negotiations and being offered to prove liability. Finally, the Superior Court held that Ramunno's testimony regarding the parties' relationship would be unfairly prejudicial under Rule 403 because he was a lawyer that had represented Continental and the jury would be inclined to give undue weight to his testimony.

(22)   This Court reviews evidentiary rulings for abuse of discretion.[17]  If there is an abuse of discretion, then we must determine whether the error constituted significant prejudice depriving the appellant of a fair trial.[18]  Applicability of the attorney-client privilege and work product doctrine is reviewed *de novo*.[19]

(23)   Gillen argues that Kimmel's statements are not privileged under Rule 502(d)(6) because he and Continental were joint clients of Ramunno communicating about a matter of common interest.  The record reflects that Ramunno was representing Continental in the litigation under discussion, but does not reflect that Ramunno was representing Gillen, a Continental sales agent, in the litigation.  If Gillen and Kimmel had jointly consulted Ramunno about forming a partnership, then those communications could be admissible under Rule 502(d)(6).  But there is no contention or indication in the record that Gillen and Kimmel jointly sought Ramunno's advice about forming a partnership and Ramunno was not retained by Continental until approximately a year after Gillen claims that the parties agreed to a partnership.  As far as statements Kimmel made in the course of the parties' April 2010 negotiations to settle their disputes, Gillen offered these

[17] *Cuonzo*, 958 A.2d at 845.

[18] *Id.*

[19] *Wal-Mart Stores, Inc. v. Indiana Elec. Workers Pension Trust Fund IBEW*, 95 A.3d 1264, 1272 (Del. 2014).

statements to prove liability. Gillen does not address the Superior Court's holding that Ramunno's proposed testimony was unfairly prejudicial to Continental under Rule 403.

(24) In addition, the statements and correspondence Gillen claims were wrongly excluded are generally cumulative of evidence that was admitted. Multiple witnesses testified that Kimmel referred to a partnership and Gillen as a partner at the 2008 dinner. Kimmel testified as to how the parties split profits and expenses on certain jobs. The excluded statements and correspondence are also well after October 2007 and do not contain any admissions by Kimmel that the parties entered into a partnership in October 2007. Having carefully reviewed the record, we conclude that the Superior Court's limitation of Ramunno's testimony and exclusion of Kimmel's April 2010 correspondence does not constitute reversible error.

(25) With respect to Gillen's claim that the Superior Court erred in denying his motion for a new trial, we review the denial of a motion for a new trial for abuse of discretion.[20] "We will find an abuse of discretion 'if the jury verdict was against the great weight of evidence, no reasonable jury could have reached

---

[20] *Young v. Frase*, 702 A.2d 1234, 1236 (Del. 1997).

the result, and the denial was untenable and unreasonable.'"[21]   Gillen seems to argue that the Superior Court erred in denying his motion for a new trial because it mistakenly believed that he had not requested preparation of trial transcripts, it did not give him the opportunity to supplement his motion with citations to the trial transcripts because the transcripts were not ready until after the Superior Court's decision, and the verdict was against the weight of the evidence.  To the extent Gillen claims he is entitled to a new trial based upon the jury instructions and the evidentiary rulings of the Superior Court, we have already addressed and rejected those claims.

(26)   The only time the Superior Court referred to the lack of trial transcript citations in its opinion denying the motion for a new trial was in connection with Gillen's claim that the Superior Court erroneously limited the testimony of Ramunno and excluded correspondence written by Kimmel.  The Superior Court reviewed the events leading to its decision to limit Ramunno's proffered testimony and concluded that Gillen did not identify any legal error in that decision.  Gillen fails to identify any portions of the trial transcripts that could have led to a different result on his motion for a new trial.  As far as the correspondence that Gillen contends was erroneously excluded, he could have included that correspondence

---

[21] *Estate of Rae v. Murphy*, 956 A.2d 1266, 1272 (Del. 2008) (quoting *Wilhelm v. Ryan*, 903 A.2d 745, 755 (Del. 2006)).

15

with his motion for a new trial but did not do so. Gillen also fails to identify any portions of the trial transcripts that could have led to a different result on his motion for a new trial.

(27) Based upon the trial record in this case, a reasonable jury could have concluded that the parties did not enter into a partnership agreement in October 2007 whereby they agreed to be 50/50 partners in the distribution and installation of energy saving devices in residential and commercial properties. Gillen has not shown that the jury's verdict was against the great weight of the evidence. Thus, the Superior Court did not err in denying Gillen's motion for a new trial.

(28) Finally, Gillen argues that the Superior Court erred in awarding the defendants $2,997.69 in attorneys' fees and costs. We review an attorney's fee award for abuse of discretion.[22] After granting the second motion for a continuance filed by Gillen's counsel over the objections of the defendants, the Superior Court ordered Gillen to pay the costs and expenses incurred by the defendants in responding to the second motion for continuance and preparing another pretrial stipulation. The Superior Court concluded that Gillen should pay these costs and expenses because it was his conduct that led to multiple continuance motions, the rescheduling of trial twice, and the filing of multiple pretrial stipulations. After trial, the Superior Court awarded the defendants

---

[22] *Johnston v. Arbitrium (Cayman Islands) Handels AG*, 720 A.2d 542, 546 (Del. 1998).

$2,997.69 of the $10,553.69 in attorneys' fees and costs they incurred in responding to the second motion for a continuance and preparing another pretrial stipulation.

(29) On appeal, Gillen claims he should not have to pay the defendants' fees and costs in connection with his second counsel's request for a continuance because counsel accepted the case and should have known he had a conflict on one of the scheduled trial days. Gillen disregards that his counsel originally requested a continuance so that he would have more than two weeks to prepare for trial. The short time frame was a result of Gillen's previous counsel (who also requested and received a continuance in order to have additional time to prepare for trial) withdrawing from the case because Gillen failed to fulfill his obligations to him. Given that Gillen's actions resulted in multiple continuance motions, the rescheduling of trial twice in two months in a case filed more than three years earlier, and the filing of multiple pretrial stipulations, the Superior Court did not abuse its discretion in awarding the defendants attorneys' fees and costs they incurred in responding to the second motion for a continuance and preparing another pretrial stipulation.

(30) Nor did the Superior Court err in awarding attorneys' fees and costs of $2,997.69. The defendants provided sufficient information concerning their attorneys' fees and costs in connection with the second motion for a continuance

and the preparation of another pretrial stipulation. Although the defendants requested $10,553.69 (consisting of $9,556 in attorneys' fees and $997.69 in costs), the Superior Court awarded $2,997.69 (consisting of $2,000 in attorneys' fees and $997.69 in costs). Gillen benefitted from this reduction and has not shown that the Superior Court abused its discretion in concluding that $2,000 in attorneys' fees and $997.69 in costs were reasonable.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

/s/ Henry duPont Ridgely
Justice