IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DENISE BUCHANAN, | § | |
| | § | No. 173, 2017 |
| Plaintiff Below, | § | |
| Appellant, | § | Court Below: Superior Court of |
| | § | the State of Delaware |
| v. | § | |
| | § | CA No. K15C-12-020 |
| TD BANK, N.A., TD BANK US | § | |
| HOLDING CO., MERIT SERVICE | § | |
| SOLUTION, LLC, a Delaware | § | |
| Limited Liability Company, JT | § | |
| SNOW REMOVAL, INC., and | § | |
| JERRY TAYLOR, | § | |
| | § | |
| Defendants Below, | § | |
| Appellees. | § | |

Submitted: February 7, 2018
Decided: May 2, 2018

Before **STRINE**, Chief Justice; **VALIHURA, VAUGHN, SEITZ** and **TRAYNOR** Justices.

**O R D E R**

On this 2nd day of May 2018, upon consideration of the parties' briefs and the record on appeal, it appears to the Court that:

(1) Appellant, Denise Buchanan, appeals from a Superior Court Order granting summary judgment for Appellees on the basis of the continuing storm doctrine. Buchanan claims on appeal that the continuing storm doctrine is not a defense to her claim because the negligence alleged by her occurred prior to the storm. Specifically, she alleges that the Appellees failed to take preventive or

precautionary measures in advance of the storm to make their premises safe for business invitees.

(2) On January 10, 2014, TD Bank operated a bank in Dover with an ATM that was open 24 hours a day, 7 days a week. According to weather records, rain began falling at 6:54 a.m. that day. The temperature when that reading was taken was 32 degrees Fahrenheit. The precipitation continued throughout the day and included sleet, freezing rain, and rain. It caused ice to form in some locations, including at the TD Bank.

(3) Around 8:00 a.m. that day Buchanan arrived at TD Bank to use the ATM. In her deposition, she testified that it was raining when she left her house and on her way to TD Bank. She parked her vehicle directly in front of the bank. As she stepped out of her vehicle and onto the pavement she slipped on ice and fell.

(4) Erica Tiffany Mansfield, Assistant Manager of the TD Bank branch, witnessed Buchanan's fall. Ms. Mansfield brought Buchanan an umbrella to shield her from the rain as she laid on the ground. An incident report prepared that day records Buchanan's fall as occurring at 7:53 a.m. The report indicated the weather conditions as "raining/sleeting" with Buchanan's fall caused by "black ice on [sic] sidewalk."

(5)     TD Bank contracted with Appellee Merit Service Solution, LLC, to perform snow and ice removal.    In turn, Merit sub-contracted that work to Appellee JT Snow Removal, Inc., which was owned by Jerry Taylor.    Taylor testified the TD Bank premises were pre-salted the evening of January 9, 2014, around 6:00 p.m. He also testified that the premises were salted again on January 10, 2014, between approximately 5:20 a.m. and 5:40 a.m., although a dispute of fact exists as to whether that salting took place.

(6)     Buchanan filed suit against TD Bank, N.A., TD Bank US Holding Co., Merit Service Solution, LLC, JT Snow Removal, Inc., and Jerry Taylor, alleging negligence for their failure to maintain the premises in a reasonably safe condition by failing to take reasonable steps to prevent ice and snow accumulation prior to the winter storm.    Appellees filed a motion for summary judgment, arguing that under the continuing storm doctrine they were permitted to wait until the winter precipitation ended and a reasonable time thereafter before removing ice from the premises.    The Superior Court granted the motion, finding that the continuing storm doctrine applied.    This appeal followed.

(7)     "This Court reviews *de novo* the Superior Court's grant or denial of summary judgment 'to determine whether, viewing the facts in the light most favorable to the nonmoving party, the moving party has demonstrated that there are

3

no material issues of fact in dispute and that the moving party is entitled to judgment as a matter of law.'"[1]

(8)     Generally, a landowner owes a duty to business invitees to keep his premises safe for their benefit.[2]   This duty includes keeping the property reasonably safe from accumulations of ice and snow that occur naturally.[3]   An exception to this general duty is known as the continuing storm doctrine.   "[I]n the absence of unusual circumstances, [a landowner] is permitted to await the end of the storm and a reasonable time thereafter to remove ice and snow from an outdoor entrance walk, platform, or steps."[4]   The policy behind this exception is that changing weather conditions due to a storm make it "inexpedient and impracticable" for a landowner "to take earlier effective action" to clear their premises.[5]

(9)     Recently, we reaffirmed our approval of the continuing storm doctrine in *Laine v. Speedway*.[6]   In *Laine*, the plaintiff slipped on ice and fell near a gas pump on the premises of a combination convenience store-gas station.   He had stopped at the store to fill up the gas tank in his employer's van.   The ice was caused

---

[1]  *Brown v. United Water Del., Inc.*, 3 A.3d 272, 275 (Del. 2010) (quoting *Estate of Rae v. Murphy*, 956 A.2d 1266, 1269-70 (Del. 2008)).
[2]  *Hamm v. Ramunno*, 281 A.2d 601, 603 (Del. 1971).
[3]  *Monroe Park Apts., Corp. v. Bennett*, 232 A.2d 105, 108 (Del. 1967).
[4]  *Young v. Saroukos*, 185 A.2d 274, 282 (Del. Super. Ct. 1962).
[5]  *Id.*
[6]  *Laine v. Speedway, LLC*, 2018 WL 315584 (Del. Supr.).

4

by a light, freezing rain, which was then falling and continued throughout the day.[7] The Superior Court granted defendant's motion for summary judgment based on the continuing storm doctrine.

(10) On appeal this Court "[held] to the view . . . that it is reasonable for a landowner to wait until a storm ends and a reasonable time thereafter before removing natural accumulations of ice and snow created by a storm, in the absence of unusual circumstances."[8] We rejected plaintiff's contention that a business that remains open during a storm should not have the benefit of the doctrine. We recognized that people benefit from having businesses like pharmacies, gas stations, and convenience stores open, which enable them to get necessities without delay.[9] To invite litigation over when or how often a landowner needs to shovel or salt its premises during an active winter storm may lead businesses to shut down during a storm, which may be detrimental to those who must travel or are out during a storm.[10] We noted "customers are expected to be aware themselves of the risks of falling [during an active storm] and to take care to protect themselves."[11]

---

[7] The January 10, 2014, storm system in *Laine* is the same storm system that caused the ice in this immediate appeal.

[8] *Laine,* 2018 WL 315584, at *5.

[9] *Id.*

[10] *Id.*

[11] *Id.*

(11)   The facts in this case are similar to the facts in *Laine*.   Both Laine and Buchanan slipped and fell on ice caused by precipitation which was then falling. The continuing storm doctrine applies in this case just as it applied in *Laine*. Appellees, as a matter of law, would be acting reasonably by waiting until the end of the storm before undertaking any remedial measures.

(12)   Buchanan seeks to avoid the continuing storm doctrine by arguing that the negligence which she alleges was failure to take preventative or precautionary measures to prevent ice from forming before the storm began.   She argues that the Appellees breached their duty of care by not salting, or more adequately salting, the TD Bank premises before the storm, knowing that a winter storm was approaching. She further argues that antecedent salting would have prevented the dangerous icing condition from occurring.   She contends that preventive maintenance is part of a landowner's general duty to keep its premises reasonably safe for all business invitees.

(13)   Buchanan relies upon two cases from foreign jurisdictions to support her theory.   Both cases are unavailing and not analogous to the matter before us. In *Honolulu, Ltd. v. Cain*, a Maryland Court of Appeals case, the defendant was held liable for a plaintiff's slip-and-fall on ice that had formed in the defendant's shopping

6

center parking lot.[12]   However, the ice formed in *Honolulu* was the result of snow embankments melting and freezing.   The snow embankments were from a winter storm that occurred eight days before, not from any active, on-going winter storm.[13] Similarly, in *Isaacson v. Husson College*, a Maine Supreme Court case, the plaintiff fell on ice that had formed more than a day after a snowstorm had ended.[14]   Neither case involves a duty to take preventive measures before a storm.   Both describe measures to remediate ice formations resulting from old snow melting and later freezing.

(14)   A landowner's duty to make its premises reasonably safe for business invitees does not require the landowner to take pre-storm, precautionary measures to attempt to prevent ice from accumulating during a storm that has not yet arrived. The principle that it is reasonable for a landowner to wait until a storm ends and a reasonable time thereafter before removing accumulations of ice and snow applies to the approaching storm as well as the storm in progress.   Prior to the winter precipitation starting at 6:54 a.m. on January 10, 2014, there is no evidence that TD Bank's premises were not in a reasonably safe condition.

---

[12] *Honolulu, Ltd. v. Cain*, 224 A.2d 433, 435 (Md. 1966).
[13] *Id.*
[14] *Isaacson v. Husson College*, 294 A.2d 98, 101–02 (Me. 1972).

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is **AFFIRMED.**

BY THE COURT:

/s/ James T. Vaughn, Jr.
Justice