IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| MOTORS LIQUIDATION | § | |
| COMPANY DIP LENDERS TRUST, | § | No.   381, 2017 |
| | § | |
| Plaintiff Below, | § | Court Below:   Superior Court |
| Appellant, | § | of the State of Delaware |
| | § | |
| v. | § | CA No. N11C-12-022 |
| | § | CCLD |
| ALLSTATE INSURANCE | § | |
| COMPANY, *et al.*, | § | |
| | § | |
| Defendants Below, | § | |
| Appellees. | § | |

Submitted:   May 2, 2018
Decided:   July 10, 2018

Before **STRINE**, Chief Justice; **VALIHURA**, and **VAUGHN**, Justices.

# **O R D E R**

Upon consideration of the parties' briefs, oral argument, and the record on appeal, it appears that:

1.     This is an insurance coverage case involving excess general liability policies purchased by General Motors for policy periods spanning from the late 1960's to the mid-1980's.   In 2009, General Motors underwent a bankruptcy reorganization, and as a result of that proceeding the rights to any proceeds from the policies were assigned to the Appellant, Motors Liquidation Company DIP Lenders Trust ("the Trust").   The Appellees are 14 insurance companies that sold the excess

policies to General Motors. The issue is whether the excess policies provide coverage for asbestos-related and environmental claims asserted against General Motors. In three opinions, the Superior Court determined that they do not and granted summary judgment to the Appellees. We have concluded that the judgment of the Superior Court should be affirmed for the reasons given by it in those opinions.

2. For more than 50 years, General Motors purchased comprehensive products liability insurance from Royal Insurance Company ("Royal"). Policies issued through 1971 were "occurrence-based," meaning the coverage responded to injuries arising from incidents occurring within the time at risk. The parties then negotiated Endorsement 15, which shifted policies issued after 1971 to "claims-made" insurance which covered occurrences reported during the policy period. Royal is not a party to this litigation.

3. The excess policies involved here are ones that towered above the Royal policies. General Motors continuously bought layers of excess coverage that towered over the Royal policies during the time-frame relevant to this case. These excess policies were issued by different carriers, covering different time frames, in different amounts, and with different attachment points. The pre-1972 excess policies "follow-form" by adopting the terms of the underlying Royal policy. It appears that some of the post-1971 excess policies follow form to the underlying Royal policies, but some contain other triggering language, such as occurrence-

based language, and some contain other language which differs from the Royal policies.

4.   In 1977, General Motors received the first of what would become thousands of claims from plaintiffs alleging they had sustained personal injury from exposure to General Motors automotive products containing asbestos.   In the years that followed, more than 40,000 such claims were filed against General Motors.

5.   From 1977 until 1993, when the Royal insurance program was terminated, almost 2,000 asbestos suits were filed against General Motors and tendered to Royal for handling.    Royal handled these claims on a claims-made basis.   It registered these claims only to the year in which the claim was received and paid each claim off the Royal policy for that year.   Asbestos claims made during the period of Royal coverage are not the subject of this action.   In the early 2000's, asbestos claims against General Motors increased dramatically.   In 2004, General Motors tendered to Royal, for defense and indemnity, 60 CDs of asbestos claims.   All of those claims were made after the Royal policy periods had expired.   None were ever submitted to General Motors or Royal during any policy year.   They are the claims for which coverage is sought in this action.   Royal denied coverage and on January 26, 2005 filed a declaratory judgment action in the Superior Court in Delaware to determine whether it had any obligation to General Motors under either the pre-1972 policies or the post-1971 policies for asbestos-related and environmental claims.   Later that

same day General Motors filed a declaratory judgment action in Michigan to determine Royal's obligations under the pre-1972 policies. In the Michigan action, General Motors did not seek any determination regarding the post-1971 policies. General Motors moved for dismissal or stay of the Delaware action. The action in Delaware was not dismissed but it was stayed in favor of the Michigan action. The Michigan action proceeded, and in 2008 General Motors and Royal entered into a settlement. The settlement released all of Royal's general liability policies, both the pre-1972 policies and the post-1971 policies, from any further liability. None of the excess general liability carriers were parties to either the Michigan or Delaware actions, and none were involved in the 2008 settlement.

6. As mentioned, in 2009 General Motors entered bankruptcy. During the bankruptcy, General Motors was renamed Motors Liquidation Corp. On December 1, 2011 Motors Liquidation Corp. filed this action. Shortly after the action was filed, Motors Liquidation Corp. assigned its rights to proceeds under its pre-1986 excess general liability policies to the Trust, as required by the bankruptcy plan of reorganization.

7. The first Superior Court opinion in the case, dated December 31, 2013, was issued in response to two motions for partial summary judgment filed by the

Trust.[1]   In those motions the Trust argued that all asbestos-related claims were a single occurrence and "all sums" allocation should apply to the pre-1972 policies. In the policies, the pertinent provision relied upon by General Motors provided that the insurance company agreed:

> To pay on behalf of the Insured all sums which the Insured shall be obligated to pay by reasons of the liability
>
> (i)   Imposed upon the Insured by law arising out of an event or a continuous or repeated exposure to conditions which result in Personal Injury or Property Damage as defined in the Underlying Insurance . . . which occurs during the period of this Insurance.[2]

8.   The Insurers argued that allocation should be pro rata.  With regard to occurrence, the Insurers argued that the course of dealing between General Motors and Royal and latent ambiguity in the policies affected the interpretation of the policy language, and they should be permitted to conduct discovery.

9.   The Superior Court denied both motions for summary judgment.  It concluded that in order to determine whether "all sums" or "pro rata" allocation applied, it must first determine whether Michigan law or Delaware law applied. The court reasoned that choice of law was not the subject of the motions, had not been fully briefed, and any decision on choice of law was premature.  As to

---

[1] *Motors Liquidation Co., DIP Lenders Trust v. Allianz Ins. Co*., 2013 WL 7095859 (Del. Super. Dec. 31, 2013).
[2] App. to Appellant's Opening Br. at A592–593.

occurrence, the court concluded that discovery should be permitted to proceed. The court did, however, decide that if Michigan law applied, allocation would be pro rata under the law of that state.

10. The second Superior Court opinion, dated November 25, 2015, was issued in response to a defendants' motion for summary judgment, a cross-motion for summary judgment filed by the Trust, and a motion filed by defendant Munich Reinsurance America, Inc. for an order declaring that the Trust was judicially estopped from asserting claims against the post-1971 excess policies.[3] The 2015 opinion addressed only the post-1971 policies. The Court found that the asbestos-related claims at issue were not covered under any of the post-1971 Royal claims-made policies because none of the claims were reported to either General Motors or Royal during any post-1971 policy period. It then reasoned that claims not covered under the Royal post-1971 policies were not covered under the post-1971 excess policies. Munich Reinsurance America's estoppel motion was granted for reasons which will be discussed hereinafter. The effect of the 2015 opinion was to grant summary judgment to all of the post-1971 insurers.

11. The third Superior Court opinion, dated June 19, 2017, dealt with seven motions of various types, but most especially a defense motion calling for pro rata

---

[3] *Motors Liquidation Co. DIP Lenders Trust v. Allianz Ins. Co.*, 2015 WL 10376123 (Del. Super. Nov. 25, 2015).

6

allocation under Michigan law. policies.[4] The court ruled that pro rata allocation applied, thus granting the defendants' motion on that point. The effect of this ruling was to grant summary judgment to all of the pre-1972 excess insurers. The combined effect of the 2015 opinion and the 2017 opinion was to grant summary judgment for all defendants.

12. "This Court reviews *de novo* the Superior Court's grant or denial of summary judgment 'to determine whether, viewing the facts in the light most favorable to the nonmoving party, the moving party has demonstrated that there are no material issues of fact in dispute and that the moving party is entitled to judgment as a matter of law.'"[5]

13. The Trust makes five claims of error on appeal. The first is that the Superior Court erred in finding that under Michigan law pro rata allocation, not all sums, applies to the pre-1972 excess policies. In its 2013 opinion, the Superior Court analyzed this issue as follows:

> *Arco Industries Corp. v. American Motorists Insurance Co.,* the current precedent in Michigan, rejected "all sums" allocation in favor of "time on the risk" proration where continuous property damage was covered by successive insurance policies. After discussing and comparing five allocation methods, *Arco* held, "we must reject any method of allocation that would require . . . coverage on a joint and several or 'all sums' basis, since that method would require

---

[4] *Motors Liquidation Co. DIP Lenders Trust v. Allianz Ins. Co.,* 2017 WL 2495417 (Del. Super. June 19, 2017).
[5] *Brown v. United Water Del., Inc.*, 3 A.3d 272, 275 (Del. 2010) (quoting *Estate of Rae v. Murphy*, 956 A.2d 1266, 1269-70 (Del. 2008)).

[indemnification] for damage occurring outside the policy period." *Arco* was affirmed by the Michigan Supreme Court. Moreover, a federal court applying Michigan law also held that the Michigan Supreme Court would adopt pro rata "time on the risk." *Stryker Corp. v. National Union Fire Insurance Co. of Pittsburgh, Pennsylvania* conducted a thorough analysis of lower court decisions, policy language, and earlier Supreme Court rulings. *Stryker* relied on the Michigan Supreme Court's prior approval of pro rata "time on the risk" allocation's simplicity and predictability, especially as paired with an injury-in-fact trigger. The court found, "the Michigan Supreme Court would adopt the pro rata 'time on the risk' method of allocation applied in *Arco*."

Plaintiff alleges there is no true conflict, because another Michigan appellate decision, *Dow Corning Co. v. Continental Casualty Company, Inc.,* applied "all sums" allocation. That was after distinguishing *Arco* by relying heavily on policy language explicitly extending coverage outside the policy period. But, *Dow Corning* is an unpublished decision, and in Michigan "an unpublished opinion of the Court of Appeals is of no precedential value." Further, the Michigan Supreme Court affirmed *Arco* after *Dow Corning* was decided.[6]

The Court followed similar reasoning when it ruled in its 2017 opinion that under Michigan law allocation is pro rata.[7] We agree with the Superior Court' analysis as forth in its 2013 and 2017 opinions. While Michigan will apply all sums allocation where there is policy language leading to that result, as in *Dow*, it applies pro rata allocation to policy language like that contained in the policies involved in this case.

---

[6] *Motors Liquidation Co., DIP Lenders Trust v. Allianz Ins. Co*., 2013 WL 7095859, at *3 (Del. Super. Dec. 31, 2013) (citing and quoting *Arco Indus. Corp. v. Am. Motorists Ins., Co.*, 594 N.W.2d 61 (Mich. Ct. App. Oct. 9, 1998), *aff'd*, 617 N.W.2d 330 (Mich. 2000); *Stryker Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 2005 WL 1610663 (W.D. Mich. July 1, 2005); *Dow Corning Corp. v. Cont'l Cas. Co., Inc.*, 1999 WL 33435067 (Mich. Ct. App. Oct. 12, 1999)).
[7] *Motors*, 2017 WL 2495417, at *18–20.

14. The Trust next contends that the Superior Court erred in finding that the Trust was judicially estopped by General Motors' prior statements in litigation against the underlying insurer, Royal, as to the operation of the post-1971 Royal coverage. It argues that no court adopted or relied on these statements by General Motors, and there can be no judicial estoppel.

15. In its opinion granting a stay in the 2005 litigation, the Superior Court noted that General Motors represented to the court that "it does not seek insurance coverage from Royal for the post-1971 policies and will not do so in any forum with respect to the asbestos-related and environmental claims at issue in [the Delaware] and the Michigan litigations."[8] In its 2015 opinion, the Superior Court elaborated on this representation:

> In 2005, GM and Royal sued each other over pre-1972 coverage, with GM filing in Michigan and Royal filing here. To bolster its forum choice, GM assured both the courts here and in Michigan that GM would never make an asbestos claim under its post-1971 policies, the ones underlying the excess policies here. Moreover, the record in both cases is replete with GM's admissions that its post-1971 coverage was "claims made." Specifically, for example, GM's counsel unequivocally assured this court:
>
> > [W]ith respect to the [post-1971] years of coverage, there is no justiciable issue here. *These are claims made policies. We are not submitting claims under them*, and I don't know how much clearer we can say that.

---

[8] *Royal Indem. Co. v. General Motors Corp.*, 2005 WL 1952933, at *10 (Del. Super. July 26, 2005).

GM similarly assured the court in Michigan concerning the post-1971 policies:

> General Motors has informed [Royal] that [*GM is*] *not claiming and will not claim under those remaining twenty years*. They don't believe us, but we submit that we are judicially bound; *we would be estopped to contend otherwise.*[9]

Judicial estoppel applies when a litigant's position "contradicts another position that the litigant previously took and that the Court was successfully induced to adopt in a judicial ruling."[10] The Trust argues that the representations made in the 2005 litigation were not accepted by the Superior Court as a basis for its ruling, as General Motors could add the post-1971claims by counterclaim in the Michigan action. However, the representations were a part of the argument made by General Motors that persuaded, or induced, the Superior Court to grant a stay. General Motors itself admitted that it would be estopped. Under these circumstances, a finding of judicial estoppel was warranted. The estoppel established that the Trust was estopped from denying that the post-1971 Royal policies were claims-made and that claims made in separate policy periods were separate occurrences. The ruling estopped the Trust from arguing that any of the claims at issue in this case triggered coverage under the post-1971 Royal policies.

---

[9] *Motors Liquidation Co. DIP Lenders Trust v. Allianz Ins. Co.*, 2015 WL 10376123, at *3 (Del. Super. Nov. 25, 2015). Actually, the Delaware action involved the post-2971 policies as well.
[10] *Motorola Inc. v. Amkor Tech, Inc.*, 958 A.2d 852, 859–860 (Del. 2008) (quoting *Siegman v. Palomar Med. Techs., Inc.*, 1998 WL 409352, at *3 (Del. Ch. Jul. 13, 1998)).

16. The Trust's third argument is that the Superior Court erred in holding that the judicial estoppel which it held prevented the underlying Royal policies from being triggered also negated coverage under the post-1971 excess insurance policies. In addressing this argument, it should first be noted that judicial estoppel was not the sole reason that the Superior Court found that the post-1971 Royal policies were claims-made and that each claim was a separate occurrence. The Superior Court also determined that Endorsement 15 was intended by the parties to convert the Royal policies from occurrence-based to claims-made. Specifically, it found that "under the policies' clear, negotiated language, the Royal policies are claims-made."[11] In a 2016 order denying reargument of its 2015 opinion, it stated that Endorsement 15 "unambiguously converted the primary coverage from occurrence-based to claims-made coverage, as old-GM and Royal intended."[12] General Motors' conduct was consistent with these findings. The asbestos-related claims after the first in 1977 were never aggregated by it with other asbestos-related claims. General Motors treated each claim as a separate occurrence, tied to the year it was reported. The Superior Court reasoned that since the post-1971 Royal policies were claims made and none of the claims involved in this case were made against either

---

[11] *Id.*

[12] *Motors Liquidation Co. DIP Lenders Trust v. Allianz Ins. Co.*, 2016 WL 825473, at *3 (Del. Super. Mar. 2, 2016).

11

General Motors or Royal during a post-1971 policy period, none of the claims were covered under those policies. The Superior Court then considered the nature of the excess policies. It noted that the policies were generally structured and sold as excess insurance. It took notice of the fact the policies were captioned as excess policies and repeatedly referred to underlying insurance.[13] Specifically, with regard to Aetna policies for which Travelers Casualty and Surety Company is now responsible, it analyzed a net loss provision contained in those policies. Under the net loss provision, the excess insurance was obligated to pay only sums "which would be covered by the terms of the controlling underlying insurance [i.e. the primary policy], if written without any limit of liability."[14] Ultimately the Superior Court concluded that the excess policies were not required to respond to claims which did not trigger coverage under the primary policies. We agree for the reasons given by the Superior Court.

17. The Trust's next argument is that the Superior Court erred by disregarding the express triggering language found in a number of the post-1971 excess policies, as well as policy language requiring that those excess policies own provisions control over language in the underlying Royal policies. This argument

---

[13] *Id.*

[14] *Motors*, 2015 WL 10376123, at *4. The 2015 opinion states that all of the excess policies contained this same net loss provision. The Trust argues that this is not true. However, no express language has been identified which would require an excess policy to respond to claims excluded from coverage under the primary policies.

is based upon the occurrence-based language and other language found in some of the post-1971 excess policies.

18. This issue was also addressed in the Superior Court's 2015 opinion. In the opening paragraph of its 2015 opinion, the Superior Court stated that the "focus now is on the . . . disharmony between the primary and excess policies' triggers of coverage."[15] Specifically, the disharmony was between the primary's "narrow, claims-made trigger" and the excess policies "broader, occurrence-based language. The question here is whether the excess policies have been triggered."[16]

19. The Superior Court then engaged in a careful and thorough analysis of the issue. It reasoned that the occurrence-based language must give way to language in the policies having the effect of providing that the excess policies are not obligated to respond to claims not triggered under the primary policy, stating that "barring exceptional circumstances or policy language not present here, higher level excess insurance policies do not respond if the primary . . . policies have not been triggered."[17] We agree there any policy language requiring excess policies to respond to claims not triggered under the primary insurance should be clear and unambiguous, and none is present here.

---

[15] *Id.* at *1.
[16] *Id.*
[17] *Id.* at *4.

13

20.     The Trust's fifth and final argument is that the Superior Court erred in holding that the first claim in General Motors' asbestos products liability occurrence, reported to General Motors during the 1977 policy year, did not trigger coverage for the full asbestos product liability occurrence under those excess policies that incorporate a trigger of "occurrences which are reported" during the policy period. This argument is premised on all of the asbestos-related claims being a single occurrence.   It must fail for the same reason the previous argument fails, which is that claims which are excluded from coverage under the post-1971 Royal policies are not covered by the excess policies.

21.     Appellees OneBeacon Insurance Company and Continental Casualty Company filed a cross-appeal.   Since we are affirming the judgment of the Superior Court, we need not address the cross-appeal.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:


/s/   James T. Vaughn, Jr.
                          Justice

14